**MILLER–DAVIS COMPANY, a Michigan Corporation, Plaintiff-Appellant,**

v.

**ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellee.**

No. 76–2213.

United States Court of Appeals, Seventh Circuit.

Argued May 25, 1977.

Decided Nov. 2, 1977.

**324**

Peter M. Sfikas, Chicago, Ill., for plaintiff-appellant.

Tanya K. Dietrich, Asst. Atty. Gen., Oak Brook, Ill., William J. Scott, Atty. Gen., Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, MARKEY, Chief Judge,* and WOOD, Circuit Judge.

FAIRCHILD, Chief Judge.

On this appeal, we are asked to consider whether it was proper for the district court to abstain from considering an Eleventh Amendment challenge to federal jurisdiction because of an unclear state issue as to waiver of sovereign immunity. We find that such abstention was not proper in this case and therefore reverse the district court's decision. We further find that the Eleventh Amendment does not bar this suit. Accordingly, we remand this case for further proceedings.

I. *The Basis of the District Court's Decision to Abstain*

Plaintiff, Miller-Davis Company, brought this suit to recover damages for alleged contract violations by defendant, the Illinois State Toll Highway Authority. Federal jurisdiction was based on 28 U.S.C. § 1332 by virtue of the diverse citizenship of the parties and the amount in controversy. Defendant moved to dismiss and for summary judgment on the ground, *inter alia*, that it was protected by sovereign immunity. The Eleventh Amendment to the Constitution recognizes sovereign immunity as a bar to the exercise of federal jurisdiction:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State.

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, is sitting by designation.

U.S.Const. Amend. XI. The district court sought to avoid the constitutional issue of whether the Amendment applied in this case by abstaining from any ruling as to jurisdiction while the parties sought state court clarification of whether a consent to suit clause in the Illinois statute creating the State Toll Highway Authority amounted to a waiver of immunity applicable in the instant case.[1] Ill.Rev.Stats. Ch. 121, § 100–31 provides:

The State of Illinois hereby consents to suits against the Authority solely as in this section provided:

(a) The holder or holders of any bonds or coupons issued by the Authority may bring suits at law or proceedings in equity to compel the observance by the Authority or by any of its officers, agents, or employees of any contract or covenant made by the Authority with the holders of such bonds or coupons, and to compel the Authority and any of its officers, agents or employees, to perform any duties required to be performed for the benefit of the holders of said bonds or coupons by the provisions of the resolution authorizing their issuance, or by this Act, or to enjoin the Authority and any of its officers, agents or employees from taking any action in conflict with such contract or covenant.

(b) Any person or persons may bring suit at law to recover damages for injury to his person or property caused by any act of any of its officers, agents

or employees done under its discretion.

Presumably, if the Illinois courts find the above waiver applicable to suits for breach of contract, it would be unnecessary for the federal court to consider defendant's Eleventh Amendment jurisdictional challenge. Thus, the district court concluded the case posed a classic situation for federal abstention, i.e., where a state court interpretation of unclear state law would avoid the need for a federal constitutional determination. *Railroad Com'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

II. *The Basis for Federal Appellate Jurisdiction*

■ Though appellee does not expressly challenge this court's jurisdiction to review a decision to stay based on abstention, we nevertheless begin by noting that this court has already considered the problems inherent in reviewing such a decision and has concluded that jurisdiction is present by virtue of 28 U.S.C. § 1291. *Drexler v. Southwest Dubois School Corporation,* 504 F.2d 836, 838 (7th Cir. 1974) (*en banc*); accord, *Vickers v. Trainor,* 546 F.2d 739, 741 (7th Cir. 1976); but see *Calvert Fire Insurance Co. v. Honorable Hubert L. Will,* 560 F.2d 792 (7th Cir. 1977).

III. *The Inappropriateness of Abstention in the Instant Case*

■ We cannot agree with the district court that this case poses a classic situation for the exercise of *Pullman* abstention. In

1. Though the Eleventh Amendment seemingly speaks in absolute terms, denying federal jurisdiction whenever a private suit is brought against a state, the Supreme Court seems consistently to have assumed that "The immunity from suit belonging to a State, which is respected and protected by the Constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure." *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883). Thus, in *Ford v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1944) the Court acknowledged Indiana's right to waive immunity from suit but found that the state made no such waiver. In other instances the Court has

held that a state can waive immunity and submit itself to federal authority by engaging in an activity uniquely within federal control such as operating an interstate railroad and consequently being an "employer" for purposes of suit under the Federal Employers Liability Act. *Parden v. Terminal Ry. Co.,* 377 U.S. 184, 192, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). A state can also waive immunity and submit itself to federal jurisdiction by entering into an interstate compact which includes a sue-and-be-sued clause and acting under it after congressional approval. *Petty v. Tennessee-Missouri Bridge Comm'n.,* 359 U.S. 275, 282, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

*Pullman*, the federal constitutional questions raised went directly to the merits of the case. Here, the "constitutional" issue raised goes to the procedural question whether or not the federal court has jurisdiction over the parties. We think this makes an important difference. Abstention is an exercise of discretion by the district court, and, as such, it cannot occur until the court has resolved any problems as to its jurisdiction. Otherwise, dismissal would be required. We conclude then that a federal court cannot abstain until it is satisfied as to its jurisdiction, even though such may require resolution of a constitutional issue on which an interpretation of state law has a bearing.

The distinction makes sense in light of the fact that abstention on a jurisdictional question would do little to further the policy underlying *Pullman* of avoiding unnecessary federal questions. In the instant case, it is clear that if a state court ruling on the waiver question determines that there has been no waiver of immunity and dismisses the suit, the federal court will still have to decide whether defendant is indeed the State of Illinois for Eleventh Amendment purposes such that the absence of any waiver would bar suit in the federal courts as well. More significantly, if the state court finds that there has been a waiver of immunity such that the Eleventh Amendment issue need not be addressed, plaintiff, who met all the requisites of diversity jurisdiction and who was, therefore, entitled to have the merits of his case resolved by a neutral federal forum, will find himself unable to return to that forum. For surely, once the state court determines that defendant can be sued, it will proceed to resolve the merits of the case. A diversity plaintiff cannot "reserve" the merits of his case for district court resolution the way a federal question plaintiff can reserve his federal claims. *Cf. England v. Louisiana State Bd. of Medical Exam'rs.*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Nor does Illinois have procedures which would allow the federal court to certify a single issue of state law to the Illinois Supreme Court. And we have reason to think that

the Illinois courts would decline to consider an attempt by plaintiff to obtain declaratory relief limited to the waiver issue. *See generally, 28 East Jackson Enterprises, Inc. v. Rosewell*, 65 Ill.2d 420, 3 Ill.Dec. 454, 358 N.E.2d 1139 (1976).

■ The resultant loss of the federal forum on all merits questions has resulted in some caution as to abstention in diversity cases. *Compare Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) and *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) *with County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). *See generally* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts & the Federal System* at 998–99 (2d ed. 1973); Currie, *The Federal Courts & the American Law Institute (Part II)*, 36 U.Chi.L.Rev. 268 (1969). It seems that before a federal court abstains in a diversity case, and forces a plaintiff to sacrifice completely his right to a federal forum, it should be convinced that the state issues which are unclear are considerably complex and that their incorrect resolution will threaten an important state policy. For example, in *Kaiser Steel, supra,* a case involving a dispute over rights to water on private land, the Supreme Court ordered abstention on the question then already pending in New Mexico state courts as to whether defendant was authorized by statute to take the water in question and whether such a statute was constitutional under the state constitution. The Court stated:

> The state law issue . . . in this case is one of vital concern in the arid State of New Mexico where water is one of the most valuable natural resources. The issue, moreover, is a truly novel one. The question will eventually have to be resolved by the New Mexico Courts . . . . Sound judicial administration requires that the parties in this case be given the benefit of the same rule of law which will apply to all other businesses and landowners concerned with the use of this vital state resource.

391 U.S. 593, 594, 88 S.Ct. 1753, 1754, 20 L.Ed.2d 835 (1968).

█ We do not think a question as to waiver of immunity, which arises in this case not because of the merits, but because of a jurisdictional challenge raised by defendants poses a complex question of that degree, especially in light of our discussion, *supra*, that a state court finding of no waiver would not be dispositive as to whether defendant can be sued in federal court while a state court finding of waiver would in effect be telling plaintiff that although it was right all along in assuming it could sue defendant, the cost of finding that out was the loss of a federal forum to resolve the merits.

Accordingly, we find it was erroneous for the district court to abstain prior to assuming jurisdiction, and we see no sound policy reason for abstaining pending state court resolution of the waiver claim even after federal jurisdiction is assumed.

IV. *Whether the Instant Suit Against Defendant is Barred by the Eleventh Amendment*

Whether the Illinois State Toll Highway Authority acts as the alter ego of the State of Illinois and whether the federal courts are therefore barred by the Eleventh Amendment from entertaining suits by private parties against the Authority are pure questions of law which were briefed by the parties on appeal. Accordingly, there is no reason to remand them to the district court. We therefore resolve the matter of jurisdiction.

█ Critical in determining whether a state agency, such as the defendant, is in fact the alter ego of the state and therefore entitled to the protection of the Eleventh Amendment is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). When a private suit would "impose a liability which must be paid from public funds in the state treasury," the Eleventh Amendment bars the federal courts from exercising jurisdiction. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974).

█ In this case, any recovery by plaintiff would come out of the Illinois Toll Highway Authority Fund, a special account held by the state treasurer. Ill.Rev.Stats. Ch. 121, § 100–24 (1975). The fund was set up through the legislature's appropriation of $1,914,000 from the state Road Fund. Ill.Rev.Stats. Ch. 121, § 100–35 (1975). The Authority was to repay the $1.9 million to the state treasury from monies collected through the sale of its bonds. Ill.Rev.Stats. Ch. 121, § 100–18 (1975). The state expressly disclaimed any liability on these bonds. Ill.Rev.Stats. Ch. 121, § 100–17 (1975). No future appropriations to the Authority were provided for. Bonds were to be issued and tolls collected by the Authority as necessary to meet expenses. These revenues would be kept in the special fund and could not be used for any purpose unrelated to the work of the Authority. Ill.Rev.Stats. Ch. 121, § 100–24 (1975). Once the initial state appropriation was repaid and once all outstanding bonds and interest had been paid, or an amount sufficient for their payment placed in trust, the Authority was to be dissolved. If any monies remained in the fund at the time of the Authority's dissolution, these were to be incorporated into the general public funds of the state treasury. Ill.Rev.Stats. Ch. 121, § 100–21 (1975).

Having considered this financing arrangement, we conclude that the Authority's fund is sufficiently segregated from the general public funds in the Illinois State Treasury, that any judgment against the fund is not a judgment against the state. We consider this fund very different from that in *Fitzpatrick v. Bitzer*, 519 F.2d 559 (2d Cir. 1975), *rev'd on other grounds*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In that case, a state employee, challenging Connecticut's retirement plan as be-

ing in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* argued that, since any recovery would come out of a segregated retirement fund, which could only be used for its designated purpose, and not out of the public funds in the state treasury, defendant, the Chairman of the State Employees' Retirement Commission, could not invoke the protection of the Eleventh Amendment to bar the suit. The Second Circuit disagreed. It found that though Connecticut might not be directly liable for a judgment against the retirement fund, the state was required to appropriate monies to the fund annually on an actuarial basis, such that at least 75% of the total retirement income payment for each year had to be made by the state. Clearly then, "[a] judgment against the fund would . . . automatically increase the obligations of the general state treasury and amount to a judgment against the state." *Id.* at 565. In contrast, in this case the state has no continuing obligation to the Authority fund. The only effect a judgment against defendant would have upon the general revenues of the State of Illinois would be a delay in repayment of the initial appropriation—if the amount has not already been repaid—or a possible delay in the dissolution of the Authority, and therefore in the exercise of the state's right to any surplus in the Authority fund on dissolution.

We note that the predecessor of the Illinois State Toll Highway Authority, the Illinois Toll Highway Commission, was created by a statute almost identical in its financing arrangements to that creating the Toll Highway Authority. *Compare* Ill.Rev. Stats. Ch. 121, § 314a26 *et seq.* (1953) with Ill.Rev.Stats. Ch. 121, § 100–1 *et seq.* (1975). The Toll Highway Commission Act was also the same as the present Act in authorizing suits against the Commission by bondholders and those suffering injury to person or property. *Compare* Ill.Rev.Stats. Ch. 121, § 314a52 (1953) *with* Ill.Rev.Stats. Ch. 121, § 100–31 (1975). At the time the Commission Act was enacted, the Illinois Constitution provided that "the State of Illinois shall never be made defendant in any court of law or equity." *See* Ill.Const. Art. 4, § 26 (1870). Accordingly, suit was brought in state court challenging the constitutionality of the consent to suit clause in the Commission Act. *See People v. Illinois Toll Highway Commission,* 3 Ill.2d 218, 120 N.E.2d 35 (1954). The Illinois Supreme Court noted that the constitutional prohibition would not apply to suits against state agencies "where the State would not be directly or adversely affected by the relief sought. . . ." *Id.* at 224, 120 N.E.2d at 38. Thus, the validity of the Act would depend on "whether the commission is to be regarded as a mere department of the State government or as an independent legal entity," *id.*—the precise issue we must resolve with respect to the almost identical Toll Highway Authority.

Reviewing the Toll Highway Commission Act, the Illinois Supreme Court found it "undeniable that in many respects [the Commission] . . . is intimately associated with the regular organs of government." *Id.* at 225, 120 N.E.2d at 39. In quoting from the opinion, we have taken the liberty of inserting footnotes which demonstrate the relevant comparisons between the Act then under consideration and the Act now before us.

Its functions are ones traditionally performed by the State. Two of its members are officers of the State government, while the others are appointed by the Governor, and may be removed by him.[2] The commission's choice of sites for toll highways as well as its preliminary estimates of costs, must be approved

---

**2.** Ill.Rev.Stats. Ch. 121, § 314a28 (1953) provides for the Governor and the Director of the Department of Public Works to serve as members of the Toll Highway Commission, *ex officio,* and for three additional members to be appointed by the Governor. Under the Toll Highway Authority Act, it is the Governor and Secretary of Transportation who serve *ex officio,* with seven additional members to be appointed by the Governor. Ill.Rev.Stats. Ch. 121, § 100–3 (1975).

by the Governor.[3] The Attorney General serves as its legal representative, and controls the selection and performance of the commission's legal staff.[4] Furthermore, while the commission may acquire property in its own name, the toll highways which it constructs are to become a part of the regular State highway system whenever the indebtedness incident to their construction has been liquidated.[5] We vote also that the legislature has made initial appropriations . . . for the performance of the commission's duties. *Id.* at 225, 120 N.E.2d at 39. Nevertheless, because the state supreme court found the financial structure of the Commission "largely independent of the regular State government" *id.*, it found the agency not to be the alter ego of the State of Illinois, and the consent to suit clause in its enacting statute not in conflict with the constitutional claim of sovereign immunity. The court explained:

> The fund which [the Commission] . . . obtains from the sale of bonds and from tolls are segregated and may be used only for toll highway purposes.[6] Conversely, the State assumes no liability upon the bonds issued by the Commission or upon any other contractual obligations which it incurs.[7] Whatever effect a recovery of damages against the commission would

3. Prior to the issuance of any bonds, the Toll Highway Commission is required to
. . . prepare and submit to the Governor for his approval, preliminary plans, showing, the proposed location of the route, or routes of the particular toll highway for which the bonds are to be issued, which said plans shall designate the approximate point of the commencement and the termination of said route, or routes, and shall also designate the municipalities to be afforded reasonable connections therewith, and served thereby. The Commission shall also, at the same time, submit to the Governor for his approval preliminary estimates of the cost of the construction of said toll highway, shown on said preliminary plans. If the Governor shall approve the said preliminary plans and the estimate of the cost thereof, or shall fail to disapprove such plan and estimates within 30 days after receipt thereof, the Commission shall, thereupon, provide by resolution for the issuance of bonds as hereinafter provided.
Ill.Rev.Stats. Ch. 121, § 314a36 (1953). Identical language is found in section 100–14.1 of the Authority Act. In addition, section 100–14 of the Act requires that,
. . . prior to the commencement of any engineering and traffic study or studies to determine the feasibility of constructing additional toll highways within the State of Illinois, [the Authority] submit to the Governor for his approval, the route, or routes, proposed for additional toll highways together with an estimate of the cost of the proposed study or studies. If the Governor shall approve such proposed study or studies and the estimated cost thereof, or shall fail to disapprove such proposed study or studies and estimate of cost thereof, within 30 days after receipt thereof, the Authority may, thereupon, proceed with such study or studies.

4. Section 314a37 of the Toll Highway Commission Act and Section 100–15 of the Toll High-

way Authority Act provide "The Attorney General of the State of Illinois, shall be ex officio attorney for the said Commission [or 'Authority' in the case of section 100–15] and shall be its legal advisor and legal representative."

5. Section 314a42 of the Toll Highway Commission Act and section 100–21 of the Toll Highway Authority Act provide:
When all bonds and interest thereon shall have been paid, or a sufficient amount for the payment of all bonds and interest due or accrued thereon shall have been set aside in trust for the benefit of the bondholders and shall continue to be held for that purpose, and when all money appropriated by the General Assembly has been repaid . . . the said toll highway, any connecting tunnels and bridges, approaches or other appurtenances to said toll highway, shall become a part of the system of the State of Illinois and be maintained and operated free of tolls. When all of the obligations of the Commission [or 'Authority'] have been paid, or a reserve for the payment thereof has been provided as is required herein, the Commission [or 'Authority'] shall be dissolved and all funds of the Commission [or 'Authority'] not required for the payment of bonds, interest, machinery, equipment, property or other obligations of the Commission [or 'Authority'] shall be paid to the State Treasurer of the State of Illinois.

6. Section 314a45 of the Toll Highway Commission Act and identical in this respect to section 100–24 of the Toll Highway Authority Act, discussed *supra*.

7. Section 314a39 of the Toll Highway Commission Act is identical in this respect to section 100–17 of the Toll Highway Authority Act, discussed *supra*.

have upon general, tax-derived revenues of the State is limited to the remote right which is given the State to receive any surplus remaining when the Commission is ultimately dissolved.[8] *Id.*

■ We are, of course, aware that in deciding whether the Illinois State Toll Highway Authority is the alter ego of the State of Illinois for Eleventh Amendment purposes, we confront a matter of federal, not state, law. *See Petty v. Tennessee-Missouri Bridge Comm'n.*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). A state would have too much self-interest in extending sovereign immunity to as many of its agencies and corporate creations as possible to allow local laws to be determinant. But that is not to say that we must ignore a state supreme court's interpretation of its own laws. *See Long v. Richardson*, 525 F.2d 74, 79 (6th Cir. 1975). Especially when a state supreme court does not extend immunity but, rather, holds that an entity is not to be deemed the state for purposes of sovereign immunity, we think the federal courts must pay careful attention to the state opinion.

Admittedly, it is the *Illinois Toll Highway Commission* and not the *Illinois State Toll Highway Authority* that the state supreme court found not to be the State of Illinois for purposes of sovereign immunity. But we find the statutes creating the two entities so similar, and the court's reasoning as to the Highway Commission so easily applicable to the Highway Authority that we must conclude that the Illinois court would concur in our determination that judgment against defendant will not have any but the most "ancillary" effect on the general funds of the State of Illinois, *see Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and that defendant is therefore not the State of Illinois for purposes of the Eleventh Amendment.

■ We note that even if we were to consider defendant as the alter ego of the State of Illinois, the state, in its Constitution now expressly waives all sovereign immunity except insofar as the General Assembly provides. Ill.Const. Art. 13, § 4 (1970).[9] The Toll Highway Authority Act nowhere contains such a provision retaining sovereign immunity. We do not think that by expressly consenting to only two kinds of suits in section 100–31 of the Act, the legislature's silence as to all other suits can be interpreted as the express retention of sovereign immunity contemplated in Article 13, section 4 of the Illinois Constitution. We are aware that the Toll Highway Authority Act was first enacted before the 1970 revision of the Illinois Constitution, *i.e.*, it was enacted when the Constitution claimed sovereign immunity as a bar to all suits brought against the state. *See* Ill. Const. Art. 4, § 26 (1870). This chronology might suggest we should in fact read the silences in the Toll Highway Authority Act as to all suits except those involving claims by bondholders or by those suffering injury to person or property as expressive of legislative intent to retain immunity with respect to the suits other than those excepted. And we might be inclined to do so but for

---

**8.** Section 314a42 of the Toll Highway Commission Act is identical in this respect to section 100–21 of the Toll Highway Authority Act, discussed *supra*.

**9.** We note that in defendant's argument and in the district court memorandum opinion there is a suggestion that since the general waiver of immunity would apply only as to suits brought in the Illinois Court of Claims and since that is not a state court of general jurisdiction, a federal court could not exercise diversity jurisdiction. We do not agree that diversity jurisdiction is dependent on the claim being cognizable in a state court of general jurisdiction. Certainly, the policy underlying diversity of providing a neutral forum for citizens of different states is as applicable to suits cognizable in special state courts as in courts of general jurisdiction. Moreover, we think such an approach to diversity gives the states too much leeway to limit what suits can be tried only in their own courts, *i.e.*, simply by assigning their resolution to specific courts. Only in those cases where a special state court is one of particular expertise or composition should a district court in its discretion, consider not exercising its diversity jurisdiction. Because we find the Toll Highway Authority not to be the alter ego of the State of Illinois and, because in that case state jurisdiction is not limited to the Court of Claims, we need not here consider whether the Illinois Court of Claims is such a unique court.

the fact the Act was enacted after the state supreme court decided *People v. Illinois Toll Highway Commission,* 3 Ill.2d 218, 120 N.E.2d 35 (1954), in which the Toll Highway Commission, the Authority's predecessor was expressly found not to be covered by the general immunity clause of Article 4, section 26 of the Illinois Constitution. As we have already noted, the Act creating the Illinois State Toll Highway Authority is almost identical to that creating the Toll Highway Commission. We conclude then that in light of the supreme court's decision as to the status of the Toll Highway Commission vis-à-vis Article 4, section 26 of the Illinois Constitution, the legislature's failure to make any significant changes in the Toll Highway Authority Act must be interpreted as its concurring in the supreme court's determination that these agencies, created to develop and maintain a highway system, are independent of the state.

## V. The Remaining Question as to Whether a Cause of Action Will Lie Against Defendant for Breach of Contract

Though defendant cannot claim the protection of the Eleventh Amendment, we think there is still some question in this case as to whether it can be sued by plaintiff for breach of contract. It is possible that a state court, considering the language of the consent to suit clause in the statute creating the Toll Highway Authority, might conclude that the legislature intended its state courts to recognize only two causes of action to lie against defendant: (1) for failure to honor its bond agreements, (2) for injury caused to person or property. Assuming the validity of such state law immunity, other actions, including those for breach of contract, such as the instant one, would be deemed not to state a claim cognizable by the courts. *See People v. Illinois Toll Highway Commission,* 3 Ill.2d 218, 227, 120 N.E.2d 35 in which the state supreme court seemingly acknowledged that the Authority might be immune from particular suits. Federal jurisdiction in this case exists only by virtue of the diverse citizenship of the parties, and it is clear that federal courts are bound to follow the substantive law of the states in which they sit. *Erie v.*

*Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It may perhaps be argued that although state laws have at times held types of persons or organizations immune from tort liability, a state may not validly create an entity capable of contracting, yet immune from liability for breach.

Whether or not plaintiff's breach of contract complaint states a claim at Illinois law is a pure question of law, but unlike the question of sovereign immunity, we do not resolve it on this appeal. Unlike the sovereign immunity claim, which was a jurisdictional matter, the instant question would be a merits determination. Moreover, the parties have not briefed this suit by reason of statutory immunity apart from sovereign immunity. We deem it appropriate to have that question presented to the district court and fully briefed.

The decision of the district court is reversed and the cause remanded for further proceedings.