**Carl W. HINES et al.,
Plaintiffs-Appellants,**

v.

**ELKHART GENERAL HOSPITAL et al.,
Defendants-Appellees.**

No. 79–1211.

United States Court of Appeals,
Seventh Circuit.

Aug. 3, 1979.

Randall J. Nye, Hammond, Ind., for plaintiffs-appellants.

Thomas J. Hall, South Bend, Ind., for defendants-appellees.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and CAMPBELL, Senior District Judge.[*]

WILLIAM J. CAMPBELL, Senior District Judge.

Plaintiffs-Appellants instituted this action in the district court for the Northern District of Indiana on July 3, 1978. The complaint, which invoked jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, asserted an action to recover damages for the wrongful death of Paula J. Hines, whose death was occasioned by the alleged medical malpractice of defendants-appellees. Defendants responded to the action by moving to dismiss the complaint because plaintiffs failed to comply with the provisions of the Indiana Medical Malpractice Act of 1975 (Act), I.C. 16–9.5–9–1 *et seq.* The district court dismissed the complaint without prejudice, concluding that the Act applied in federal diversity actions, and upholding the Act against plaintiffs' numerous constitutional challenges. 465 F.Supp. 421. We affirm the district court's holding that the Act applies in diversity actions in the federal district courts of Indiana. We find it unnecessary in the circumstances of this case to consider plaintiffs' constitutional challenges to the Act.

The salient features of the Act are set forth in the district court's opinion, and we need not repeat them here. It is sufficient to note that plaintiffs failed to comply with the provision of the Act requiring a claimant to file his or her complaint with a medical review panel and to obtain the panel's opinion on the claim prior to instituting a court action. As in the court below plaintiffs contend here that they were not required to comply with the Act because the Act is not applicable to actions filed in the federal district courts of Indiana.

We dispense with plaintiffs' first argument that by its very terms the Act is inapplicable to actions in federal court under diversity by agreeing with Judge Sharp's characterization of this argument as "totally devoid of merit." 465 F.Supp. at 424. The fact that the Indiana legislature employed two phrases[1] in the Act to refer to courts does not mean that the Act is inapplicable to diversity cases in the federal courts of Indiana. If anything is clear and well established from the decision in *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, it is the principle that the law to be applied by a federal court in a diversity case is the law of the State, and for that reason "a federal court adjudicating a State-created right solely because of the diversity of citizenship of the parties is . . . only another court of the State . . . ." *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). We find nothing in the provisions of the Act itself which prevents the Act's application in the Indiana federal courts exercising jurisdiction under diversity of citizenship.

Plaintiffs also argue that the Act is inapplicable in federal diversity actions because

---

[*] Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. I.C. 16–9.5–9–2 refers to "any court of this State"; I.C. 16–9.5–1–6 mentions "any court of law having requisite jurisdiction."

the Act would infringe upon the federal interest in preserving the essential character of the federal courts, particularly the role of the jury. In support of this argument plaintiffs rely on *Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.C.R.I.1978) and *Byrd v. Blue Ridge Rural Electric Co-op,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). We believe plaintiffs' reliance on these decisions is misplaced.[2]

In *Byrd* the Supreme Court had under consideration a South Carolina court practice which required a judge, and not a jury, to make a factual determination with respect to an affirmative defense. The Court was faced with the question of whether this state court practice was applicable under *Erie* to federal actions in South Carolina based on diversity. In holding that the practice was not applicable, the Court noted that the state court rule was not "bound up with the definition of rights and obligations of the parties," and that there was no suggestion that the rule was "an integral part of the special relationships created by the statute." 356 U.S. at 536, 78 S.Ct. at 900. After again stressing that the state rule was not bound up with rights and obligations, the Court further held that the application of the state court rule in federal diversity actions could not prevail over the federal policy favoring jury resolution of disputed fact questions. 356 U.S. at 538, 78 S.Ct. 893.[3]

The provisions of the Act in this case are significantly different from the state court practice held inapplicable to federal courts in *Byrd.* We conclude that application of the Act in the federal district courts of Indiana neither detracts from the independence of the federal judicial system nor disrupts the federal system of allocating functions between judge and jury.

It cannot be disputed that the Act's requirement of the submission of a claim to the medical review panel for its opinion prior to the institution of a judicial action is an integral part of the rights and obligations established by the Act. This procedure is clearly not a mere form or mode for enforcing rights or obligations, but rather the procedure is bound up with those rights and obligations. Moreover, the Act does not deprive a claimant of a trial by jury; rather, the Act specifically preserves that right.[4] The Supreme Court in *Byrd* found that application of the state court rule involved in that case to diversity actions would disrupt the traditional federal system of allocating functions between judge and jury. No such result obtains by the application of the Act in this case to diversity cases presenting a claim for medical malpractice in the federal courts of Indiana. Consequently, we cannot conclude that application of the Act will have the deleterious effects on the federal judicial system which the plaintiffs assert.

The concern in *Guaranty Trust Co. v. York, supra,* for the proper distribution of judicial power between State and federal courts led to the establishment of the "outcome-determination" policy, which the Court formulated as follows: "[I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the

---

2. In *Wheeler* the district court found that reference of a medical malpractice case to a medical liability mediation panel established by state statute and appointed by the state court would be inconsistent with and would defeat the purpose of the congressional grant of diversity jurisdiction. 78 F.R.D. at 222–23. As Judge Sharp correctly noted, the statutory provisions under consideration in *Wheeler* vary drastically from the provisions of the Act involved in this case. The considerations which impelled the *Wheeler* district court to hold the Rhode Island Medical Malpractice Reform Act inapplicable to federal diversity actions in Rhode Island are not present in this case.

3. The Court in *Byrd* also based its holding on the view that the "outcome-determinative" policy enunciated in *Guaranty Trust Co. v. York, supra,* was outweighed by a "strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal court." 356 U.S. at 538, 78 S.Ct. at 901. The court also expressed its uncertainty that the outcome of the case would be substantially affected by whether the disputed factual question was decided by a judge or a jury. 356 U.S. at 539–40, 78 S.Ct. 893.

4. *See:* I.C. 16–9.5–1–6.

litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of the litigation, as it would be if tried in a State court." 326 U.S. at 109, 65 S.Ct. at 1470. This policy is to be understood in connection with "the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965). Our holding that the Act is applicable to the Indiana federal district courts exercising jurisdiction on the basis of diversity of citizenship is consonant with the promotion of these objectives.

Plaintiffs also contend that the Act violates the Seventh and Fourteenth Amendments of the United States Constitution as well as various provisions of the Indiana Constitution. For several reasons we do not reach the constitutional questions.

With respect to challenges to the Act under the Indiana Constitution, we have been advised by counsel that the precise issues raised by plaintiffs in this case are presently pending in two appeals to the Supreme Court of Indiana.[5] In view of this circumstance, and in view of the obvious substantial public importance associated with the Act and its purposes, we believe it is appropriate to abstain from any adjudication of the Act's viability under the Indiana Constitution. *See: Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Plaintiffs' contention that the Act violates the Seventh Amendment of the federal constitution is presented to us on the basis of an inadequate record. Plaintiffs do not attack the Act as facially unconstitu-

tional on Seventh Amendment grounds, but rather argue that the Act's requirement of pre-litigation submission of a claim to the medical review panel unconstitutionally impairs their right to a trial by jury because such a procedure involves additional delay and expense and increases their burden of proof. Although compliance with procedures of the Act may produce such results, plaintiffs' argument is made in a factual vacuum. This case is before us on appeal from an order dismissing the complaint for failure to comply with the Act. In this posture no facts were developed in the district court, and there is no record of any unconstitutional effects caused by the application and operation of the Act. We are thus asked to strike down the Act on the basis of hypothetical and conjectural unconstitutional effects. We decline to make a constitutional adjudication in advance of demonstrated facts supporting the asserted unconstitutional results of the Act's application. *See: Thorpe v. Housing Authority,* 393 U.S. 268, 284, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Maryland v. Wirtz,* 392 U.S. 183, 200–201, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). For the same reason, we do not address plaintiffs' contention that application of the limitation of damages provision of the Act to this case violates the equal protection clause of the Fourteenth Amendment.[6]

For the foregoing reasons the judgment of the district court is affirmed.

AFFIRMED.

---

**5.** *Johnson v. St. Vincent's Hospital,* No. 1078 S. 216; *Mansur v. Carpenter,* No 379 S. 79. With their brief in this court defendants-appellees filed a motion requesting us to certify to the Indiana Supreme Court questions pertaining to the constitutionality of the Act under the Indiana Constitution. Because of the pendency of the same questions before that court we deny the motion.

**6.** We note moreover that plaintiffs also argue that the limitation of damages provision violates Art. I, § 23 of the Indiana Constitution. This issue, we are advised by counsel, is presently pending before the Indiana Supreme Court. See Note 5, *supra.*