Mary E. MARTIN, formerly Mary E. Barbee, Plaintiff,

v.

B.P. CHOUDHURI, M.D., a/k/a Vishnu Choudhuri, M.D. and Patients Compensation Fund, an administrative unit of the State of Wisconsin, Defendants.

No. 82–C–931.

United States District Court, W.D. Wisconsin.

May 5, 1983.

Marcovich, Cochrane & Milliken by Toby E. Marcovich, Superior, Wis., for plaintiff.

Thrasher, Doyle & Pelish by Joe Thrasher, Rice Lake, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

This is an action for medical malpractice. Plaintiff Mary Martin alleges that she suffered damages resulting from a negligent failure to diagnose and treat a cervical infection. Plaintiff names B.P. Choudhuri, M.D. and the Patients Compensation Fund as defendants.

Defendants have filed a motion to dismiss, arguing that this Court lacks jurisdiction over defendant Patients Compensation Fund (Fund). As a result, defendants contend, the claims against defendant Choudhuri should be dismissed, pursuant to 19(b), Federal Rules of Civil Procedure. As it holds that it has jurisdiction over the Fund, the Court does not reach the issue of dismissal under Rule 19(b).

*The Fund*

Chapter 655 of the Wisconsin Statutes established the procedures for processing malpractice claims against doctors and other "health care providers" in Wisconsin. The statute created two kinds of Patient Compensation Panels, Informal and Formal. Wis.Stat. § 655.03. The Informal Panels usually hear patient claims seeking $10,000 or less in damages, while most of the larger claims are heard by Formal Panels. Wis. Stat. § 655.04(2).

Both kinds of Panels have the authority to determine whether actions or omissions of a "health care provider" (in this case, defendant Choudhuri) were negligent, and, if so, whether that negligence caused injury or death to the patient. Based on these findings, a Panel may award compensation. Wis.Stats. § 655.065.[1]

Unless otherwise agreed, either party may appeal a panel decision and receive a full trial in court, Wis.Stat. § 655.19, although appearance before a panel is required prior to initiating litigation. *Mazurek v. Miller,* 100 Wis.2d 426, 303 N.W.2d 122, 124 (Wis.App.), cert. denied, 454 U.S. 896, 102 S.Ct. 395, 70 L.Ed.2d 212 (1981).

Chapter 655 limits the liability of each health care provider to $200,000 per claim. Wis.Stat. § 655.23(5). To pay portions of awards exceeding $200,000, Chapter 655 established the Patients Compensation Fund. The Fund is financed from fees assessed upon health care providers in Wisconsin and is managed by an independent board of governors. Wis.Stats. § 655.27(1)–(3). The fund is strictly audited, Wis.Stat. § 655.-27(4), and is used only to pay claims. Wis. Stat. § 655.27(6) ("The fund shall be held in trust for the benefit of insureds and other proper claimants. The fund may not be used for purposes other than those of this chapter."). Should the balance in the Fund be insufficient to pay all claims, "claims received after the funds are exhausted shall be immediately payable the following year in the order in which they were received." Wis.Stat. § 655.27(5)(e). The State of Wisconsin is not liable for any obligation under the Fund. Wis.Stat. § 619.04(9).

To claim from the Fund, the patient must name it as a defendant:

Any person may file an action for damages arising out of the rendering of medical care or services against a health care provider covered under the fund provided that such person filing the claim shall not recover against the fund any portion of a judgment for damages arising out of the rendering of medical care or services against a health care provider covered under the fund unless the fund was named as a defendant in the suit. If after reviewing the facts upon which the claim is based, it appears reasonably probable that damages paid on the claim will exceed $200,000, the fund may appear and actively defend itself when named as a defendant in the suit. In such action, the fund may retain counsel and pay out of the fund attorney's fees and expenses including court costs incurred in defending the fund. The attorney or law firm retained to defend the fund shall not be retained or employed by the board of governors to perform legal services for the board of governors other

---

1. The panels are funded from fees charged to health care providers. Wis.Stat. § 655.21.

than those directly connected with the fund. Any judgment affecting the fund may be appealed as provided by law. Wis.Stat. § 655.27(5)(a).

### The Eleventh Amendment

The Eleventh Amendment states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court described the operation of the Amendment:

While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.... It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. In *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459 [65 S.Ct. 347, 89 L.Ed. 389] (1945), the Court said:

"[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.,* at 464 [65 S.Ct. at 350].

Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.

415 U.S. at 662–663, 94 S.Ct. at 1355–1356 (cites omitted).

Defendants argue that the Patients Compensation Fund is so closely related to the State of Wisconsin that it is the equivalent of a state agency. Therefore, defendants insist, the Fund may not be named as a defendant in this case. The Court cannot agree and holds that the Patients Compensation Fund is a proper party defendant in this case because the Fund is sufficiently distinct from the State of Wisconsin that the action is not "in essence one for the recovery of money from the [S]tate," *id.* at 663, 94 S.Ct. at 1356, citing *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

### The *Miller-Davis* Test

Defendants assert that Chapter 655 so intertwines the Fund with the State of Wisconsin that the Fund is an alter ego of the State. Such a contention cannot withstand scrutiny.

The Court of Appeals has advised that "[c]ritical in determining whether a state agency, such as the defendant, is in fact the alter ego of the state and therefore entitled to the protection of the Eleventh Amendment is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury." *Miller-Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323, 327 (7th Cir.1977).

In *Miller-Davis,* the Court of Appeals considered whether the Illinois State Toll Highway Authority could claim Eleventh Amendment immunity. The Court carefully examined the source of the fund that plaintiff would turn to satisfy its judgment:

In this case, any recovery by plaintiff would come out of the Illinois Toll Highway Authority Fund, a special account held by the state treasurer. Ill.Rev.Stats. Ch. 121 § 100–24 (1975). The fund was set up through the legislature's appropriation of $1,914,000 from the state Road Fund. Ill.Rev.Stats. Ch. 121 § 100–35 (1975). The Authority was to repay the $1.9 million to the state treasury from monies collected through the sale of its bonds. Ill.Rev.Stats. Ch. 121, § 100–18 (1975). The state expressly disclaimed any liability on these bonds. Ill.Rev. Stats. Ch. 121, § 100–17 (1975). No future appropriations to the Authority were provided for. Bonds were to be issued and tolls collected by the Authority as

necessary to meet expenses. These revenues would be kept in the special fund and could not be used for any purpose unrelated to the work of the Authority. Ill.Rev.Stats. Ch. 121, § 100–24 (1975). Once the initial state appropriation was repaid and once all outstanding bonds and interest had been paid, or an amount sufficient for their payment placed in trust, the Authority was to be dissolved. If any monies remained in the fund at the time of the Authority's dissolution, these were to be incorporated into the general public funds of the state treasury. Ill.Rev.Stats. Ch. 121, § 100–21 (1975).

Having considered this financing arrangement, we conclude that the Authority's fund is sufficiently segregated from the general public funds in the Illinois State Treasury, that any judgment against the fund is not a judgment against the state.

*Id.* at 327.

Similarly, the Patients Compensation Fund is a special segregated account, is strictly audited, and is used solely to pay malpractice claims. The Fund is financed not from general tax revenues, but from fees assessed upon health care providers. Should the Fund run short of money, claimants would wait until the following year when the Fund collects its fees from health care providers; the State of Wisconsin has expressly disclaimed any liability of the Fund.

Therefore, consistent with *Miller-Davis,* the Fund is not entitled to the protection of the Eleventh Amendment. *See Kostelic v. Bernardi,* 538 F.Supp. 620, 622 (N.D.Ill.1982) (where unemployment benefits sought are payable from a trust fund comprised solely of money contributed by private employers, Eleventh Amendment immunity not available). *Cf. United Pacific Insurance Co. v. Capital Development Board of the State of Illinois,* 482 F.Supp. 541, 543 (N.D.Ill.1979) (where state issues bonds on behalf of state agency which are general obligations of the state, nexus between agency funds and general public funds creates Eleventh Amendment protection against suit against agency).[2]

*Other Objections to Federal Court Jurisdiction*

 Defendants also suggest that the provisions of Chapter 655, including one purportedly limiting venue to state court,[3]

---

**2.** Courts in other jurisdictions look to additional factors in determining if an agency is entitled to Eleventh Amendment immunity. Where the question of whether the State would be required to meet a judgment is in doubt, the Court of Appeals for the Seventh Circuit also endorses a more comprehensive examination. In *Adden v. Middlebrooks,* 688 F.2d 1147 (7th Cir.1982), the Court of Appeals was unable to determine if the State of Louisiana would be liable for any damages found against the State of Louisiana Department of Corrections or the Louisiana Correctional and Industrial School. Therefore, despite its praise for *Miller-Davis,* the Court of Appeals also considered additional factors:

> These include whether the agency may sue and be sued in its own name, whether any legislative provision stating that the agency performs an essential governmental function exists, whether the agency has power to buy and/or sell property in its own name, and whether the agency is accorded independent status under state law.

*Id.* at 1153 (cites omitted). Similar formulations appear in *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 251 (3d Cir.1969), cert. denied, 397 U.S. 948, 90 S.Ct.

967, 25 L.Ed.2d 129 (1970); and *Krisel v. Duran,* 258 F.Supp. 845, 849 (S.D.N.Y.1966), aff'd, 386 F.2d 179 (2d Cir.1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968). Although the *Miller-Davis* test dispels any suggestion of Eleventh Amendment immunity in this case, under the *Adden* criteria, Eleventh Amendment immunity is similarly unavailable. Although the Fund is an important protection for the people of Wisconsin, the Fund may be sued, may invest its assets (Wis.Stat. § 655.-27(4)(e)), and is managed by an independent Board of Governors (Wis.Stat. §§ 655.27(2)(e), 619.04(3)).

**3.** Wis.Stat. § 655.19 provides in part:

> Unless the parties have stipulated in writing under § 655.07 to be bound by the panel determination, any party to a panel hearing may, within 120 days after the date of an order made by a panel, commence an action for a trial in the circuit court for the county designated in the submission of controversy under § 655.04. The provisions of ch. 805 which are not in conflict with this chapter shall apply to the trial. No panel member may participate in the trial either as counsel

forbid federal jurisdiction. Diversity jurisdiction, however, does not depend upon the venue provisions in state statutes:

If anything is clear and well established from the decision in *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, it is the principle that the law to be applied by a federal court in a diversity case is the law of the State, and for that reason "a federal court adjudicating a State-created right solely because of the diversity of citizenship of the parties is ... only another court of the State ...." *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). We find nothing in the provisions of the Act itself which prevents the Act's application in the Indiana federal courts exercising jurisdiction under diversity of citizenship.

*Hines v. Elkhart General Hospital,* 603 F.2d 646, 647 (7th Cir.1979). Therefore, the fact that Wis.Stat. § 655.19 provides for trial in "circuit court" does not divest this Court of diversity jurisdiction. *See Hines,* 603 F.2d at 647. *See generally Duchek v. Jacobi,* 646 F.2d 415 (9th Cir.1981) (Article III of Constitution and congressional statutory grants of jurisdiction, not state statutes, define the scope of federal jurisdiction; even where literal reading of state statute suggests proceedings supplementary to and in aid of execution must be held in state court, federal jurisdiction to enforce judgments not ceded to the state).

■ Finally, defendants claim that the comprehensive statutory scheme embodied in Chapter 655 precludes malpractice litigation in federal court. In fact, federal

courts have almost unanimously adopted state medical malpractice statutes, most including submission of claims to medical panels, to diversity actions in federal court.[4]

Consistent with *Erie* and its progeny, the Court holds that where a plaintiff satisfies the statutory prerequisites to malpractice litigation against the Patients Compensation Fund, that litigation may be prosecuted in federal court under 28 U.S.C. § 1332(a)(1). This Court sees no threat to the Fund, to federalism, or to Chapter 655 if plaintiff is permitted to name the Fund as a defendant in federal court. While this holding may well permit patients from other states to elect either federal or state litigation, defendants' indictment of "forum shopping" should apply with similar force to all cases under diversity jurisdiction. Relief from the problem of diversity jurisdiction may come only from congressional reexamination of 28 U.S.C. § 1332(a)(1).

### ORDER

IT IS ORDERED that defendants' motion to dismiss is DENIED.

---

or witness. The judgment or order of the circuit court shall supersede any order or award made by a panel in a hearing under this chapter.

4. In *Hines,* the Court of Appeals required plaintiff to submit his medical malpractice claim to an Indiana medical review panel prior to filing a lawsuit in federal court. *See also Feinstein v. Massachusetts General Hospital,* 643 F.2d 880 (1st Cir.1981) (Massachusetts statutory scheme applied in federal malpractice suit); *DiAntonio v. Northampton-Accomack Memorial Hospital,* 628 F.2d 287 (4th Cir.1980) (Virginia malpractice statute applied in federal court); *Edel-*

*son v. Soricelli,* 610 F.2d 131, 136 (3d Cir.1979) (even though Pennsylvania statute requiring arbitration of medical malpractice claims is "a resounding flop," federal court still applies state statute); *DiFilippo v. Beck,* 520 F.Supp. 1009 (D.Del.1981) (federal court applies Delaware malpractice statute). *See* cases and articles cited in *Kanouse v. Westwood Obstetrical & Gynecological Associates,* 505 F.Supp. 129, 131 (D.N.J.1981) (New Jersey state court rule providing for panel review in malpractice cases adopted in federal diversity actions). *Contra: Wheeler v. Shoemaker,* 78 F.R.D. 218 (D.R.I. 1978).