**Sakuntala DUTTA, Plaintiff,**

v.

**Ron TODD, Commissioner of Insurance; and The Health Care Stabilization Fund, Defendants.**

**No. 93–1073–PFK.**

United States District Court, D. Kansas.

June 2, 1993.

Amy S. Lemley and J. May Liang, of Foulston & Siefkin, Wichita, KS, for plaintiff.

Wayne T. Stratton and Steve A. Schwarm, of Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

The present case is a declaratory judgment action brought by the plaintiff, Dr. Sakuntala Dutta, against the Kansas Health Care Stabilization Fund (the Fund) and its commissioner, Ron Todd. Dutta seeks a determination that she is entitled to tail coverage under the Fund. Dutta's coverage lapsed on January 5, 1992. On February 24, 1992, Dutta requested tail coverage as an inactive health care provider. This request was denied on March 2, 1992 by the Kansas Department of Insurance. The department stated that under state law Dutta was obliged to seek tail coverage within 30 days of the lapse of her coverage on January 5. Dutta argues that the 30–day period runs from February 24, the date she formally changed her status from active to inactive.

The question presented by the current motion to dismiss is whether the Fund and its commissioner act as the alter ego of the State of Kansas for purposes of determining the possible application of Eleventh Amendment immunity.[1] The defendants argue that they are agents of the State of Kansas entitled to immunity under the Eleventh Amendment. The plaintiff contends that Eleventh Amendment immunity is inapplicable herein. On May 26, 1993, the court conducted a hearing in which the parties presented arguments relating to the defendants' motion. For the reasons stated herein, the court hereby denies the motion to dismiss.

■■ When an action is in essence one for the recovery of money from the State, "the state is the real, substantial party in interest" and is therefore protected by the Eleventh Amendment. *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Thus, even though a state is not named a party to the action and individual officials are nominal defendants, a suit by private parties remains barred by the Eleventh Amendment if the suit seeks to impose a liability which must be paid from public funds in the state treasury. *Kennecott Copper Corp. v. State Tax Com'n,* 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). An ancillary, prospective effect on a state treasury due to an award of injunctive relief will not create Eleventh Amendment immunity; but where the award, though cast in terms of equitable relief, reflects compensation for "monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials," the State is protected by Eleventh Amendment immunity. *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974). *See also Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

■■ "Critical in determining whether a state agency, such as the defendant, is in fact the alter ego of the State and therefore entitled to the protection of the Eleventh Amendment is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury." *Miller–Davis Co. v. Illinois State Toll Highway Authority,* 567 F.2d 323, 327 (7th Cir.1977). In determining whether a given agency is the alter ego of the State, courts have asked (1) the agency sue and be sued in its own name; (2) whether there is any legislative provision stating that the agency performs an essential governmental function; (3) whether the agency has the power to enter into contracts or buy and or sell property in its own name; (4) whether the agency is given independent status under state law; (5) whether, in the event plaintiff prevails, the judgment will have to be paid out of the state treasury; (6) whether the agency performs a proprietary or a governmental function; (7) whether the agency is separately incorporated; (8) the degree of autonomy enjoyed by the agency; and (9) whether the sovereign has immunized itself for the agency's actions. *See Adden v. Middlebrooks,* 688 F.2d 1147, 1153 (7th Cir.1982); *Urban v. Board of Managers of New Jersey*

---

1. The defendants have seized on the admission in the plaintiff's response that the Fund is an "agency" of the state of Kansas. That statement is made by the plaintiff in her response, but it is made in passing in the introductory portion of the plaintiff's brief. The remainder of the brief makes clear that the plaintiff is not conceding that the Fund is an agent of the state of Kansas for eleventh amendment purposes.

*State Prison,* 415 F.2d 247, 251 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970).

■■ In determining whether the defendant agency is an arm of the State entitled to Eleventh Amendment immunity or is a mere political subdivision not entitled to that protection, the court must examine the powers, nature, and characteristics of the agency under state law. *Meade v. Grubbs,* 841 F.2d 1512 (10th Cir.1988). In a case involving a suit against a local school board, the Tenth Circuit identified two primary tests of an agency's status as an alter ego of the State: "(1) To what extent does the board, although carrying out a state mission, function with substantial autonomy from the state government and, (2) to what extent is the agency financed independently of the state treasury." *Unified School Dist. No. 480 v. Epperson,* 583 F.2d 1118, 1121–22 (10th Cir. 1978).

■ Applying these tests to the defendants herein, the court finds that the Health Care Stabilization Fund is not entitled to Eleventh Amendment immunity. The Fund is maintained not by the general tax revenues of the State but by a surcharge on practicing physicians. The Fund is overseen by a board of governors which, in addition to the state commissioner of insurance, is composed of 11 health care providers and two members of the public. K.S.A. 40–3403(b)(2). The Fund's assets are not commingled with the State's general funds but are held in trust in a segregated account in the state treasury. K.S.A. 40–3403(a). Under K.S.A. 40–3405, general revenue funds may be advanced to the Fund upon a certification of necessity by the director of accounts, but any funds which are so advanced must be repaid to the State. Finally, the Fund itself does not serve a traditional governmental function, but is "based upon the concept of commercial liability insurance." *Todd v. Kelly,* 251 Kan. 512, 525, 837 P.2d 381 (1992).

Most of the defendants' arguments are based on a general statement of Eleventh Amendment principles. In their reply brief, however, the defendants present two arguments which are addressed to the circumstances of the Fund in particular.

The defendants first argue that the Fund may use state revenue funds in a number of circumstances. These circumstances appear to be rather limited, however. Under K.S.A. 40–3403(j)(1), (2) and (4), the Fund can look to the state general fund for compensation when the Fund is required to pay claims in certain cases. This only occurs, however, when the underlying malpractice claim is advanced against a person engaged in residency training or a faculty physician of the University of Kansas Medical Center, or against other persons who were engaged in some other postgraduate program of residency training which has been approved by the State Board of Healing Arts. K.S.A. 40–3403(c)(11), (12), (14), (15).

The defendants make no argument that the moneys advanced to the Fund under these limited provisions represent any significant amount of the Fund's total assets. More importantly, there is no claim that the plaintiff is a person who falls under any of these categories. Thus, even assuming the plaintiff physician prevails herein but subsequently loses her medical malpractice claim, any liability of the Fund would not represent a loss to the state treasury.

The defendants next rely on the Tenth Circuit decision in *Esparza v. Valdez,* 862 F.2d 788 (10th Cir.1988), in which the court held that an action against Colorado's unemployment compensation fund was barred by the Eleventh Amendment. The court stated that the mere fact these moneys were held in a segregated account in the state treasury did not nullify the defendants' Eleventh Amendment immunity. *Id.* at 794. Unlike the present case, however, the funds held in *Esparza* reflected moneys raised by the State through state taxes, in combination with federal contributions. The Fund, on the other hand, is not only held in a separate account, it is funded exclusively through a surcharge on health care providers. Moreover, in functioning essentially as a liability insurer, the Fund performs a role traditionally performed by private persons rather than fulfilling a traditional government function.

In their reply brief and during the hearing on the present matter, the defendants have

also focused on several decisions finding various entities to be state agencies for purposes of the Eleventh Amendment. The defendants point in particular to the Eleventh Amendment immunity of the Kansas State Board of Healing Arts, *see Taliaferro v. Kansas St. Bd. of Healing Arts,* No. 89–2545–V, 1991 WL 80140 (D.Kan. Apr. 5, 1991), and also cite several other decisions upholding Eleventh Amendment immunity for the Nevada State Industrial Insurance System, *Austin v. State Indus. Ins. System,* 741 F.Supp. 1466 (D.Nev.1990), and the Maryland Deposit Insurance Fund Corporation, *Levitt v. State of Maryland Deposit Ins. Fund Co.,* 643 F.Supp. 1485 (E.D.N.Y.1986); *American Cas. Co. v. Community Sav. & Loan,* 635 F.Supp. 539 (D.Md.1986).

The court finds that these decisions are not controlling here, since each of the agencies in the cited cases possess attributes not shared by the Fund. The Kansas Board of Healing Arts, for example, has been recognized as exercising a traditional governmental role by virtue of its quasi-judicial functions. *See Taliaferro v. Voth,* No. 89–2545–V, 1992 WL 220786 (D.Kan. Aug. 20, 1992). The board "is an administrative body created under the police power of the state." *Kansas St. Bd. of Healing Arts v. Foote,* 200 Kan. 447, 449, 436 P.2d 828 (1968).

The Nevada State Industrial Insurance System, identified as a state agency in *Austin,* was created by statute as "a public agency," was required to hold its property in the name of the state of Nevada, and had explicit regulatory and quasi-judicial authority. And, although the industrial insurance system was not directly funded by the State, the *Austin* court expressly found that the State could be responsible for judgment against the system if its resources were depleted. 741 F.Supp. at 1467. Similarly, the Maryland Deposit Insurance Corporation was found by the District Court of Maryland to be subject to "virtually complete state control." *American Cas.,* 635 F.Supp. at 540. In addition, the court noted that the accumulated earnings on the fund's assets accrued to the benefit of the State. *Id.* at 541. The Eastern District of New York reiterated these considerations and further noted that it was also "significant that the emergency legislation creating MDIF does not authorize it to pay judgments or settle lawsuits," with the result that any judgment against MDIF "would have to be satisfied out of the state treasury." *Levitt,* 643 F.Supp. at 1490.

In contrast to these entities, the role of the Kansas Health Care Stabilization Fund is essentially equivalent to that of a private liability insurer. Only in certain specified contexts, which are not implicated here, may state funds be advanced to the Fund. State law does permit the State to advance moneys to the Fund in the event the Fund's assets are too small to satisfy a judgment, but the same law explicitly requires the Fund to repay any such advances in full within a designated time. K.S.A. 40–3405. Unlike the MDIF, the Kansas Fund is given explicit authority to settle claims, K.S.A. 40–3410, and all income generated by the Fund's investments accrues to the benefit of the Fund, not the State. K.S.A. 40–3406.

One case has addressed the status of a similar liability insurance fund. In *Martin v. Choudhuri,* 563 F.Supp. 207 (W.D.Wisc.1983), the court held that the Wisconsin Patients Compensation Fund was not protected by Eleventh Amendment immunity. The court noted that the Wisconsin fund

> is a special segregated account, is strictly audited, and is used solely to pay malpractice claims. The Fund is financed not from general tax revenues, but from fees assessed upon health care providers. Should the Fund run short of money, claimants would wait until the following year when the Fund collects its fees from health care providers; the State of Wisconsin has expressly disclaimed any liability of the Fund.

563 F.Supp. at 210.

The defendants have naturally attempted to distinguish this decision, but this court can find no substantial justification for departing from the result obtained in *Martin.* In the present case, the general revenue of the State is advanced to the Fund only as either a short-term loan or in a limited set of cases involving the liability of residents in training. The court finds that the Fund is not an

944

agency of the State of Kansas entitled to Eleventh Amendment immunity.

There are a number of subsidiary arguments which have been raised by the defendants. The first and foremost is an argument that there is no diversity in the present case. The defendants rest this argument, however, entirely upon *Krieger v. Trane Company*, 765 F.Supp. 756 (D.D.C.1991), in which the court analogized the alter ego test under the Eleventh Amendment with the test for diversity and pendent party jurisdiction under 28 U.S.C. § 1332. The defendants accordingly argue that there is not diversity jurisdiction in the present case. But, as noted above, the court finds that the Fund is not the alter ego of the State of Kansas. Accordingly, the defendants' diversity argument fails also.

In the course of their arguments as to Eleventh Amendment immunity and diversity jurisdiction, the defendants include passing statements as to (1) the merits of the plaintiff's claim, and (2) the failure of the plaintiff to exercise her right to administrative review of the March 2, 1992 decision to deny her coverage. Neither of these arguments, however, is set forth separately and independently in the defendants' brief in support of their motion to dismiss. Nor does the summary of arguments at the end of the defendants' brief discuss these arguments. Accordingly, the court will withhold any ruling upon such matters until they are separately and independently presented to the court and to the plaintiff for response.

IT IS ACCORDINGLY ORDERED this 2 day of June, 1992, that the defendants' motion to dismiss (Dkt. No. 3) is hereby denied.