Kathryn R. CAREY et al., Plaintiffs-Appellants, Cross-Appellees,

v.

Arthur F. QUERN et al., Defendants-Appellees, Cross-Appellants,

and

Joseph Bertrand et al., Defendants-Appellees.

Nos. 77–2223, 77–2224.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1978.

Decided Dec. 13, 1978.

Rehearing Denied March 23, 1979.

Kenneth Montgomery, Chicago, Ill., Sheldon Roodman and Thomas Johnson, Legal Assistance Foundation of Chicago, Ill., for plaintiffs-appellants, cross-appellees.

Robert Retke, Patricia Rosen, Chicago, Ill., for defendants-appellees, cross-appellants.

Before TONE and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Prior to August 1, 1976, Chicago General Assistance recipients who were employed received a clothing allowance as a regular part of their monthly assistance grants. Those Chicago General Assistance recipients who were unemployed, however, did not receive a clothing allowance as a regular part of their monthly General Assistance grants. Rather, unemployed recipients received a clothing allowance on an "as needed" basis. This distinction between General Assistance recipients on the basis of employment for the purposes of clothing allowances was effectuated through Official Bulletin No. 66.68 of the Illinois Department of Public Aid and forms the basis for this action.

The plaintiff class, consisting of all unemployed recipients of General Assistance and their dependents in Chicago, brought this action under 42 U.S.C. § 1983 seeking declaratory and equitable relief. The complaint alleged that the defendants[1] deprived the plaintiffs of their Fourteenth Amendment rights by distinguishing between General Assistance recipients on the basis of employment, and by administering the clothing allowance program in an arbitrary and capricious manner. The complaint was filed on November 14, 1975. On June 25, 1976 defendants promulgated Illinois Department of Public Aid Official Bulletin 76.19, which announced that effective August 1, 1976, the Department would amend its policy to provide unemployed recipients automatic clothing allowances as a regular part of the monthly General Assistance grant. As a result of this policy amendment, the plaintiff class received clothing allowance benefits on an equal basis with employed General Assistance recipients and all other Public Aid recipients.

The district court entered a preliminary injunction on October 18, 1976, requiring defendants to notify all class members of their right to apply for clothing benefits which they had not received during the period between November 14, 1975 and August 1, 1976. Thereafter, on cross-motions for summary judgment, the district court granted judgment in favor of the plaintiffs on the issue of liability, but granted judgment in favor of defendants Quern and Daniel (the Directors of the Illinois and Cook County Departments of Public Aid, respectively) with respect to the claim for retroactive clothing allowance benefits which were denied to the class between the date of the filing of the complaint and the effective date of the policy amendment.

*  Senior District Judge William J. Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

1.  As far as relevant to this appeal the complaint named as defendants the Director of the Illinois Department of Public Aid and the Director of the Cook County Department of Public Aid, which, by statute, is an instrumentality of the State of Illinois and an agency of the Illinois Department of Public Aid (Ill.Rev.Stat., ch. 23, § 12–18.1). Upon motion of the plaintiffs, the district court allowed the complaint to be amended to add as defendant the Treasurer of the City of Chicago. Judge McMillen denied the motion to add the City of Chicago as a defendant.

Judge McMillen also granted summary judgment in favor of defendant Bertrand, the City of Chicago Treasurer, and dismissed the complaint as to him. The plaintiff class has appealed the judgment in favor of defendants insofar as it denied the recovery of retroactive clothing allowance benefits, and insofar as it dismissed the municipal defendants. Defendants Quern and Daniel have cross-appealed the granting of judgment in favor of plaintiffs on the question of liability. We affirm.

Turning first to the issue raised by the cross-appeal, the complaint asserted that the distinction employed by defendants between employed and unemployed General Assistance recipients for purposes of clothing allowance benefits contravened both the equal protection and due process rights of the plaintiff class. From the district court's decision on the motion for preliminary injunction and the decision on motions for summary judgment, it appears that the district court found that the defendants administered the "as needed" clothing allowance program without any standards and in an arbitrary and capricious manner amounting to a violation of due process.[2] Pointing to Official Bulletins relating to the kind and amount of clothing, and to the responsibility of case workers to evaluate clothing needs for unemployed recipients, defendants Quern and Daniel contend that sufficient due process standards for the administration of the clothing allowance component of the General Assistance Program had been promulgated. This contention, however, overlooks other evidence in the record.

In the context of eligibility for welfare assistance, due process requires at least that the assistance program be administered in such a way as to insure fairness and to avoid the risk of arbitrary decision making. See: *White v. Roughton*, 530 F.2d 750, 753 (7th Cir. 1976); *Holmes v. New York City Housing Authority*, 398 F.2d 262, 265 (2d Cir. 1968). Typically this requirement is met through the adoption and implementation of ascertainable standards of eligibility. The record in the instant case demonstrates that the defendants employed no system or method designed to inform members of the plaintiff class of their right to a clothing allowance as a part of their General Assistance grant.[3] Further, defendants neither issued an Official Bulletin nor utilized any administrative guidelines governing eligibility determinations for the "as needed" program pertaining to unemployed recipients. In short, it is readily apparent from the record that prior to August 1, 1976, an unemployed recipient could have received a clothing allowance benefit only upon the making of an application for a benefit of which the applicant was unaware, and upon favorable action with respect to the application by the defendants without reference to any standards of eligibility. The district court correctly found that the clothing allowance benefit was administered in a manner inconsistent with the requirements of due process.[4]

Although the district court found that defendants had violated plaintiffs' due process rights, it held that any claim for retroactive benefits for the period from the date of the filing of the complaint (November 14, 1975) to the date of defendants'

2. Our affirmance of the district court's conclusion on plaintiffs' due process claim renders unnecessary our consideration of plaintiffs' additional contention that defendants' actions also amounted to a deprivation of plaintiffs' equal protection rights.

3. The record reflects that almost 98% of all unemployed General Assistance recipients received no clothing allowances prior to August 1, 1976. When the plaintiff class members were notified pursuant to the preliminary injunction about the clothing allowance benefit, over 54,000 of them responded with an applica-

tion for clothing allowances. Only 17 refused to apply.

4. Although the claim for declaratory and injunctive relief appears to have been mooted by the defendants' change of policy enunciated in Official Bulletin 76.19, counsel for the plaintiff class advised us at oral argument that, had the district court not entered judgment in favor of the class on the question of liability, nothing would prevent the defendants from reverting to the policy that existed prior to August 1, 1976.

policy change (August 1, 1976) was barred by the Eleventh Amendment. Plaintiff class contends that an award of retroactive clothing allowance benefits would not contravene the Eleventh Amendment because such an award would not be payable from public funds held in the state treasury. Alternatively, plaintiffs argue that any award can be made from General Assistance funds raised by the City of Chicago. Because we find that the Eleventh Amendment bars any award by way of judgment for retroactive benefits in this case, we reject plaintiffs' contentions.

It is well established that the Eleventh Amendment bars a federal court from entertaining an action which seeks to impose a liability which must be satisfied from the general revenues of the state. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Vargas v. Trainor*, 508 F.2d 485, 491 (7th Cir. 1974), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). The fact that the state is not named as a defendant is of no consequence, for even though only individual state officials are named as defendants, "when the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity" under the Eleventh Amendment. *Ford Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Where, as here, the Eleventh Amendment bar is invoked, it is necessary to determine whether the bar is applicable by analyzing "the essential nature and effect of the proceeding," *Id.,* as well as the entity against which recovery is sought. *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In this case, defendant Quern is Director of the Illinois Department of Public Aid, which is clearly an arm of state government. Ill.Rev.Stat., ch. 127 § 3, § 48a. Defendant Daniel is Director of the Cook County Department of Public Aid. The County Department is not a governmental instrumentality of Cook County, but rather is an instrumentality of the State of Illinois and an agency of the Illinois Department of Public Aid to which it is entirely subject. See Note 1, *supra.* The General Assistance Program in the City of Chicago is a combined city-state program which is administered by defendant Daniel. Ill.Rev.Stat., ch. 23 § 12–21.3. To participate in the General Assistance Program, the City of Chicago is required to levy a tax of an amount which will equal .10% of the last known total equalized value of all taxable property located in the city. Ill.Rev.Stat., ch. 23, § 12–21.13; ch. 24, §§ 11–43–1, 11–43–2. All monies from this tax levy and any state appropriations for General Assistance in Chicago are paid into the Special Purpose Trust Fund. Ill.Rev.Stat., ch. 23, § 12–21.15. The fund is comprised almost entirely of funds appropriated by the State of Illinois.[5]

The Treasurer of the State of Illinois is the *ex officio* custodian of the Special Purposes Trust Fund, which is held outside the State Treasury. Ill.Rev.Stat., ch. 23, § 12–10. Plaintiffs contend that since by statute the Special Purposes Trust Fund is held outside the State Treasury, satisfaction of any judgment from this Fund would not contravene the Eleventh Amendment. We believe that this contention overlooks the realities of the situation presented by this case. The Special Purposes Trust Fund is under the direct control of the State Treasurer and is used to discharge the State's obligation to make disbursements for General Assistance as well as other designated purposes. Nearly all the money comprising the Fund comes from the general revenues of the State of Illinois. The Fund has no financial independence. In view of the function of the Special Purposes Trust Fund, the primary source of its revenue, and its lack of financial independence from the State, we conclude that any judgment

---

5. The record shows that from the period of November 1975, through July, 1976, the City of Chicago transferred approximately $7.4 million to the Fund. The State contributed about $134.5 million to cover disbursements of $142.3 million to recipients in Chicago. Thus, over 95% of the funds distributed to recipients were supplied by the State of Illinois.

which must be satisfied out of the Special Purposes Trust Fund is a judgment against the State to which the Eleventh Amendment bar applies.

The facts pertaining to the financial scheme in this case are thus demonstrably distinguishable from those in *Miller-Davis Co. v. Illinois State Toll Highway Authority*, 567 F.2d 323 (7th Cir. 1977), which also involved a special account held by the State Treasurer. In that case we concluded that the Authority's fund was "sufficiently segregated from the general public fund of the Illinois State Treasury, that any judgment against the fund [was] not a judgment against the State." *Id.*, at 327. In so concluding, we noted that after an initial appropriation by the state legislature to establish the fund, the Authority was to repay the amount of the appropriation to the Treasury through the sale of bonds which it was authorized to issue. The State expressly disclaimed any liability on the bonds, and no future appropriations were provided for. Expenses of the Authority were to be met from the sale of bonds and the collection of tolls. *Id.*, at 327. Those considerations, which tended to establish that the fund in *Miller-Davis* was financially autonomous, are not present in this case. Defendants are not authorized to generate revenue through the sale of obligations; rather, the record shows that the fund in this case consists almost entirely of monies appropriated from the General Revenue Fund.

Our recent decision in *Mackey v. Stanton*, 586 F.2d 1126 (7th Cir. 1978) is likewise distinguishable from the instant case. On the basis of a comparison of the Ohio statutes involved in *Mt. Healthy City Board of Ed. v. Doyle, supra,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 with the Indiana statutes in *Mackey*, we held the Eleventh Amendment to be no bar to a judgment against a county's welfare fund. Among the factors impelling that conclusion was the statutory requirement that each county maintain its own welfare fund within the county treasury. Further, each county was authorized to raise funds by tax levies and the issuance of bonds. Also Indiana statutes authorize the issuance of bonds by a

county for the purpose of funding indebtedness evidenced by judgment rendered against the county, thus providing a means to satisfy a judgment without resort to the funds in the state treasury. *Mackey v. Stanton, supra,* at 1131.

The factors deemed important in *Mackey* and *Mt. Healthy* are not present in the instant case. Under the Illinois statutory scheme, there is no locally maintained welfare fund. See: Ill.Rev.Stat., ch. 23, § 12–21.14. The relatively small amount of funds raised by the City of Chicago for participation in the General Assistance Program pursuant to Ill.Rev.Stat., ch. 23, § 12–21.13, are not maintained in a local fund, but rather the City Treasurer is required to pay all monies so raised directly to the Special Purposes Trust Fund. Ill.Rev. Stat., ch. 24, § 11–43–2. Thus, the City Treasurer's collection and transfer of funds is statutorily defined, non-discretionary, and entirely ministerial. Since under the statutory scheme in this case, the City of Chicago Treasurer can only collect and transmit the funds to the Special Purposes Trust Fund, ultimately to be used by state officials only for the purposes enumerated in Ill.Rev.Stat., ch. 24, § 11–43–2, it is apparent that the City Treasurer functions solely as a revenue agent for the state with respect to these funds. Nor is there present in this case a statutory provision authorizing the funding of judgment-created indebtedness through the local issuance of bonds—a factor the presence of which was deemed significant in *Mackey*.

In conclusion, we hold in this case that the Eleventh Amendment bars the satisfaction of a judgment for retroactive benefits from the funds of the Special Purposes Trust Fund and from the monies raised by the City of Chicago for transmittal to that Fund.

Accordingly, for the reasons stated herein, the judgment of the district court is affirmed. Our resolution of the issues in this order renders consideration of other issues raised by plaintiffs unnecessary.

AFFIRMED.