Doris HOLBROOK, Plaintiff,

v.

Henry C. PITT, Defendant and Third-Party Plaintiff,

v.

SECRETARY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Third-Party Defendant.

No. 78–C–105.

United States District Court, E. D. Wisconsin.

Oct. 31, 1979.

Legal Action of Wis., Inc., by Lawrence G. Albrecht, James A. Gramling, Jr., Milwaukee, Wis., for plaintiff.

Herz, Levin, Teper, Chernof & Sumner, by Robert A. Teper, Milwaukee, Wis., for Pitt.

Joan F. Kessler, U. S. Atty., by William E. Callahan, Jr., Asst. U. S. Atty., Milwaukee, Wis., for U. S.

MYRON L. GORDON, District Judge.

## DECISION and ORDER

This case raises certain questions regarding the administration of the housing assistance program established under section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f (as amended by § 201(a), Housing and Community Development Act of 1974). In count one of the amended complaint, the plaintiff Holbrook seeks compensatory relief against the defendant Pitt. In counts two and three, Ms. Holbrook and a class of similarly situated individuals seek monetary, declaratory and injunctive relief against the third party defendant, Secretary of the Department of Housing and Urban Development (HUD). The action is before me on the plaintiffs' and HUD's cross motions for summary judgment.

## I. BACKGROUND

The section 8 program provides assistance for multi-family projects with HUD-held or HUD-insured mortgages, including projects sold by HUD subject to purchase money mortgages. The program provides direct cash assistance to eligible, low income tenants and also ensures the continuing viability of financially troubled HUD-held and HUD-insured projects. *See* S.Rep.No.94–749, 94th Cong., 2nd Sess., *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 1885 *et seq.*; [1974] U.S.Code Cong. & Admin.News, p. 4273 *et seq.*

HUD's regulations implementing the section 8 program, which are not challenged in this action, are codified at 24 C.F.R. § 886.-

101 *et seq.* The regulations, together with HUD's program instruction handbook, establish a system pursuant to which HUD makes housing assistance payments to owners of eligible multi-family projects on behalf of eligible tenants. The heart of the assistance payment system is the contract entered into between HUD and the owner. The contract governs the relationship between the contracting parties and spells out the duties of the owner with respect to administration of the section 8 program.

The contract vests all administrative and management functions in the owner. The contract provisions which are pertinent to this law suit are the following:

"1.9 *Leasing of Units*

. . . . .

c. *Eligibility, Selection, and Admission of Families*

(1) The Owner shall be responsible for determination of eligibility of applicants, selection of families from among those determined to be eligible, and computation of the amount of housing assistance payments on behalf of each selected Family in accordance with schedules and criteria established by the Government.

. . . . .

1.11 *Reduction of Number of Contract Units for Failure to lease to Eligible Families*

a. *After First Year of Contract.* If at any time, beginning six months after the effective date of this Contract, the Owner fails for a continuous period of six months to have at least 80 percent of the Contract Units leased or available for leasing by Families, the Government may on 30 days notice reduce the number of Contract Units to not less than the number of units under lease or available for leasing by Families, plus 10 percent of such number if the number is 10 or more, rounded to the next highest number."

In practice, these provisions are applied in the following manner. Appearing on the face of the contract is the maximum housing assistance commitment undertaken by HUD, which amount is determined on the basis of the number of "contract units" in the project and their corresponding "contract rents." The maximum assistance amount is available for the payment of section 8 benefits beginning with the full month of the date the contract is executed, i. e., if the agreement is signed on April 15th, benefits are available for the payment of April's rent.

However, an owner will not receive assistance payments for the benefit of a specific family until he certifies to HUD such family's eligibility to participate in the section 8 program. The owner is not required to certify any set number of families living in contract units as eligible. His only incentives to make the certifications are that (1) he will not receive payments from HUD on behalf of a particular family until certification occurs, and (2) HUD may reduce the number of contract units, and thus its maximum assistance commitment, under the provisions of ¶ 1.11 regarding the leasing of contract units. Under this system, an owner may certify a family as eligible as of the date the contract was executed, or he may not certify eligibility until a later date without making the certification retroactive to the date of execution.

The instant controversy centers on this discretion of the owner regarding when to certify and whether to make his certification of eligibility retroactive to the execution date. The defendant Pitt and HUD executed a section 8 contract on June 10, 1976; however, Mr. Pitt did not certify the plaintiff Holbrook and other tenants living in the Main Street Gardens project as eligible until November 29, 1976. Benefits were then paid to Mr. Pitt on behalf of Ms. Holbrook and the other tenants commencing December 1976. When this action was commenced, Ms. Holbrook had not received section 8 benefits for the six months from June to December although she was eligible to receive them.

Ms. Holbrook filed a complaint against Mr. Pitt to recover these benefits on July

27, 1977, in the small claims division of the county court. Mr. Pitt filed a third party complaint against HUD, and HUD subsequently removed the action to this court. Ms. Holbrook then filed an amended complaint, adding two counts against HUD, the third party defendant. Substantial discovery transpired; Ms. Holbrook and HUD entered into a stipulation of uncontested facts. Many of the facts recited above, and those to be discussed in the course of this opinion, are derived from this stipulation.

## II. COUNT I

In the first count of the amended complaint, Ms. Holbrook sued Mr. Pitt to recover as damages $660.18, representing the difference between the rent she paid from June through November, 1976, and the rent she would have paid had she been receiving section 8 benefits during the same period. The theory of recovery was that Ms. Holbrook was a third party beneficiary of the contract between Mr. Pitt and HUD, and that Mr. Pitt materially broke the contract by delaying certification until late November, 1976. Count I also seeks costs and attorney's fees.

 By letter dated September 19, 1979, Mr. Pitt's attorney has informed me that Mr. Pitt certified the eligibility of Ms. Holbrook to receive retroactive benefits for the period in question, and that Mr. Pitt, upon payment by HUD, tendered to the plaintiff's attorney a check for the sum of $725, representing payment of such retroactive benefits. I believe these events moot the claim Ms. Holbrook has against Mr. Pitt to recover retroactive benefits. Since Mr. Pitt has not acted in bad faith, I conclude that he should not have attorney's fees assessed against him. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Therefore, count I of the amended complaint will be dismissed.

## III. COUNT II

Count II, which seeks declaratory and monetary relief against HUD, is also based on the theory that eligible section 8 tenants are third party beneficiaries of contracts executed between HUD and owners of the projects in which such tenants reside. On November 6, 1978, I entered an order certifying this count as a class action defined to include

"[a]ll families in the State of Wisconsin who resided in dwelling units when Section 8 Set-A-Side Contracts were executed between HUD and the owner of their dwelling units and who were certified pursuant to the contracts for housing assistance payments but who did not receive the benefits of housing assistance payments as of the effective date of the contracts."

The plaintiffs argue that HUD's failure to provide section 8 benefits retroactive to the date of execution of the contracts constitutes a substantial violation of HUD's contractual duties. The plaintiff class seeks a declaratory judgment to that effect and class-wide recovery of the amount of retroactive benefits. The plaintiffs also seek attorney's fees.

In their briefs, the parties have argued the question whether the plaintiffs are in fact third party beneficiaries of the section 8 contracts executed between HUD and the project owners. On the view I take of this aspect of the case, however, I need not decide this issue, for, even assuming, without deciding, that the plaintiffs are third party beneficiaries, I hold that HUD has not violated any contractual duty it may owe to the plaintiffs.

 It is well established that a third party beneficiary is bound by the terms and conditions of the contract it invokes. *See Trans-Bay Engineers & Builders, Inc. v. Hills,* 179 U.S.App.D.C. 184, 192, 551 F.2d 370, 378 (D.C. Cir. 1976); *Rotermund v. United States Steel Corp.,* 474 F.2d 1139, 1142 (8th Cir. 1973). Under paragraph 1.9(c) of the section 8 contract, it is the owner who is given the responsibility to effect certifications of eligibility, and there is no contract provision requiring HUD to make assistance payments until the necessary certifications are performed. Indeed, the plaintiffs almost concede as much when,

in paragraph 13, they allege that "[n]o provision of applicable HUD regulations *forecloses* HUD from making housing assistance payments on behalf of certified families as· of the effective date of each contract. . . ." (emphasis added). But this is not to say that HUD is *required,* by the terms of the contract or otherwise, to pay retroactive benefits. *See Wright v. Califano,* 587 F.2d 345, 356 (7th Cir. 1978) ("An expectation of public benefits does not confer a contractual right to receive the hoped for benefits.").

Tacitly acknowledging that the contract does not expressly impose upon HUD the duty that it has allegedly violated, the plaintiffs urge me to imply a performance term into the contract, requiring the contracting parties to perform certification and begin providing benefits within a reasonable time. The plaintiffs argue that the effective date of the contract is such a reasonable time. Since paragraph 1.11, quoted above, sets the terms and conditions of performance, it would be inappropriate for me to re-write the contract with respect to a term the contracting parties have already agreed upon.

The plaintiffs are not entitled to recover their attorney's fees. Therefore, count II of the amended complaint will be dismissed.

### IV. COUNT III

In count III of the amended complaint, the plaintiffs contend that the failure of HUD to require owners promptly to certify eligibility to receive benefits and to make such certification retroactive to the date of contract execution denies them due process of law in violation of the fifth amendment. The class of persons which Ms. Holbrook represents in her claims under count III was defined in my order of November 6, 1978, to include

"[a]ll families in the State of Wisconsin who resided or will reside in dwelling units when Section 8 Set-Aside Contracts were executed or will be executed between HUD and the owner of their dwelling units and who were certified or will be certified pursuant to the contracts for housing assistance payments but who did not or will not receive the benefits of housing assistance payments as of the effective date of the contracts."

The plaintiffs argue that they have a legitimate claim of entitlement to the receipt of section 8 benefits as of the date of contract execution, and that the provision of such benefits must commence no later than thirty days after the execution date. To enforce these rights, the plaintiffs ask, inter alia, that I order HUD (1) to include a provision in section 8 contracts requiring owners to certify eligible families within thirty days of contract execution; (2) to initiate housing assistance payments within the thirty day period, such payments to cover the period retroactive to the execution date; and (3) to provide a meaningful opportunity for eligible families to challenge unreasonable certification delays.

HUD, on the other hand, asserts that the plaintiffs do not possess a "legitimate claim of entitlement" to retroactive benefits. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). HUD argues that a property inter-' est in section 8 benefits does not arise until the owner certifies a family as eligible to receive such benefits. Prior to certification, HUD contends that the plaintiffs have an "inchoate property interest," which is merely a "subjective expectancy" not entitled to any due process protection. I agree.

In *Roth,* the Supreme Court set forth the following guidelines for use in determining whether an individual has a constitutionally protected property interest in particular benefits:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or under-

standings that secure certain benefits and that support claims of entitlement to those benefits." 408 U.S. at 577, 92 S.Ct. at 2709.

In this case, the plaintiffs have failed to advance any independent "rules or understandings" supporting their claim of entitlement; indeed, after careful examination of the applicable statute and implementing regulations, as well as the section 8 contract, I believe that no such "independent source" exists.

The statute creating the section 8 assistance program has this to say with respect to participation in the program:

"Contracts to make assistance payments entered into by a public housing agency with an owner of existing housing units shall provide (with respect to any unit) that . . . the selection of tenants for such unit shall be the function of the owner, subject to the provisions of the annual contributions contract between the Secretary and the agency." 42 U.S.C. § 1437f(d)(1)(A).

HUD's regulations implementing this statutory mandate, 24 C.F.R. § 886.119, provide:

"(a) The Owner shall be responsible for management and maintenance of the project in conformance with requirements of the Regulatory Agreement. These responsibilities shall include but not be limited to:

. . . . .

"(3) Performance of all management functions including the taking of applications, selection of Families including verification of Income and other pertinent requirements, and determination of eligibility and amount of Family contribution in accordance with HUD—established schedules and criteria;

. . . . ."

Paragraph 1.9 of the section 8 contract, subparagraph (c), quoted above, in similar terms vests wide discretion in the project owner with respect to making eligibility certifications.

Nowhere in these statutory and regulatory provisions has Congress or HUD mani-

fested an intention "to create a governmental obligation" to tenants who have not been certified as eligible to receive section 8 benefits. *Geneva Towers Tenants Organization v. Federated Mortgage Investments,* 504 F.2d 483, 494 (9th Cir. 1974) (Hufstedler, J., dissenting), *cited with approval in Harlib v. Lynn,* 511 F.2d 51, 55 n.11 (7th Cir. 1975). In the absence of such an intention, the plaintiffs' claim of entitlement is simply a unilateral expectation; as such, no matter how reasonable the expectation may be, it is not an enforceable claim of entitlement. *Id.*

The plaintiffs' reliance on *Carey v. Quern,* 588 F.2d 230 (7th Cir. 1978), is misplaced. In *Carey,* the plaintiffs were a class of unemployed welfare recipients who were also entitled to receive a clothing allowance on an "as needed" basis. However, because the plaintiffs were not informed of the clothing allowance, and the welfare officials had no standards for determining need, the court of appeals held that "the clothing allowance benefit was administered in a manner inconsistent with the requirements of due process." *Id.* at 232. In *Carey,* no question was presented as to the plaintiffs' entitlement to the clothing allowance; therefore, since due process clearly applied, the issue became what process was due. In the instant case, however, the plaintiffs have failed to establish an entitlement to governmental benefits; accordingly, I simply do not reach the issue of what process is due.

■ Contrary to the plaintiffs' contention, I do not believe that reliance on the project owner to perform eligibility certifications is arbitrary or capricious. The government has at least two strong interests in delegating this function to the project owners: first, HUD's administrative and financial burdens are lightened by being freed of this cumbersome task, and second, the owner is in a better position to determine whether a particular family qualifies under the pertinent eligibility criteria. Vesting the owner with discretion over certification is also consistent with the statute's goal of assisting financially troubled

projects. Moreover, it appears that the system presently incorporates incentives for the performance of eligibility certifications: the owner will not receive any benefits pursuant to the contract as to a given tenant until the latter's certification is performed, and the owner will suffer a reduction in the number of contract units if less than eighty percent of his contract units are not leased or available for leasing to eligible families one year after the contract is executed.

I am not unmindful of the appearance of arbitrariness caused by the fact that some owners perform retroactive certifications while others do not, and by the fact that some owners certify eligibility promptly after contract execution while others do not. However, I am also mindful that the Supreme Court has admonished lower courts against "engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress." *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 525, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978). In the circumstances of this case, where the plaintiffs have not been endowed with an enforceable right to government benefits, and where the administrative scheme is rationally based on legitimate governmental objectives, I simply am not at liberty to impose my own notions as to how the section 8 program ought to be administered.

I wish to emphasize what this case does not involve. I am not confronted with a claim that Mr. Pitt, or any other project owner who has as tenants members of the plaintiff class, has refused to certify a family as eligible to receive section 8 benefits on racial or other inherently suspect grounds; such action by an owner would violate paragraph 2.1(a) of the section 8 contract and would also raise serious constitutional questions. Nor am I presented with the question whether procedural due process is triggered when an owner finds that a particular family does not satisfy the eligibility criteria for participation in the assistance program. The only two questions I must decide are whether due process compels the project owner to make retroactive certifications and whether he must certify at all within any particular time; I hold that due process requires neither.

## CONCLUSION

Therefore, IT IS ORDERED that the plaintiffs' motion for summary judgment be and hereby is denied.

IT IS ALSO ORDERED that the third party defendant's motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that the amended complaint and this action be and hereby are dismissed.