Doris **HOLBROOK**, Plaintiff-Appellee,

v.

Henry C. **PITT**, Defendant and Third-Party Plaintiff

v.

**SECRETARY, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,** Third-Party Defendant-Appellant.

No. 82–3064.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1984.
Decided Nov. 19, 1984.

James A. Gramling, Jr., Leg. Action of Wis., Inc., Milwaukee, Wis., for plaintiff-appellee.

Nicholas Zeppos, Dept. of Justice, Civ. Div., Washington, D.C., for third-party defendant-appellant.

Before BAUER and FLAUM, Circuit Judges, and WYATT, Senior District Judge.*

WYATT, Senior District Judge.

The Secretary, United States Department of Housing and Urban Development ("HUD"), the third-party defendant herein, appeals from an order of the District Court, filed October 21, 1982, granting a motion by plaintiff Doris Holbrook for an order under 28 U.S.C. § 2412 and the "common fund doctrine" awarding attorneys' fees. The order awarded attorneys' fees of $30,000 and directed that this allowance "be assessed against absent class members". This Court has jurisdiction of the appeal under 28 U.S.C. § 1291.

The order below and the present appeal came about by reason of a proceeding in the District Court which followed the decision of this Court, made in this same action on March 2, 1981. *Holbrook v. Pitt,* 643 F.2d 1261 (7th Cir.).

We now reverse the order from which this appeal is taken.

### 1.

This litigation grew out of Section 8 of the United States Housing Act of 1937, as amended by Section 201(a) of the Housing and Community Development Act of 1974, codified in part as 42 U.S.C. § 1437f and usually referred to as "Section 8". This legislation is designed to help lower-income families to secure adequate housing; Section 8 provides a program of housing assistance payments by HUD under contracts with housing project owners on behalf of eligible lower-income tenants. "Rental assistance payments" is sometimes used in place of housing assistance payments. The two terms are interchangeable and refer to the described payments by HUD.

The Section 8 statute and the Regulations under it provide for the housing assistance payments to be made by HUD to the *owner* of the dwelling unit occupied by an eligible tenant, and *not* to the tenant.

42 U.S.C. § 1437f(b)(1). In the Regulations, under the heading "Housing Assistance Payments to Owners", is this provision: "Housing Assistance Payments shall be paid *to Owners* for units under lease by Eligible Families...." 24 C.F.R. § 886.-109(a); (emphasis supplied). The object is that the owner of the project will receive from HUD the housing assistance payment (a rent subsidy) and will receive from the eligible tenant the difference between the agreed rent and the Section 8 subsidy. As this Court said on the earlier appeal (643 F.2d at 1268–69; emphasis supplied):

Upon the completion of certification of eligible families by the owner, HUD makes housing assistance payments *to owners* on behalf of tenants in accordance with the provisions of the contract.

Plaintiff Holbrook was a tenant in Main Street Gardens, a housing development in Milwaukee owned by defendant Pitt. On June 10, 1976, HUD and Pitt made a contract under Section 8 by which HUD agreed to make housing assistance payments to Pitt, beginning in June 1976, on behalf of eligible tenants of Main Street Gardens; Holbrook was one of these. Pitt, the owner, did not mail promptly to such eligible tenants the necessary Section 8 forms; these were not mailed by Pitt until November 16, 1976. Thus it was that Holbrook and others were not certified to HUD by Pitt until late November 1976. Between June and November 1976, no housing assistance payments were made by HUD to Pitt and for these months, therefore, Holbrook paid the full, total rent for her housing.

### 2.

This action was commenced by plaintiff Holbrook in July 1977 as a small claims action for $660.18 in the Milwaukee County Court. The amount claimed was the amount of rental assistance payments which the owner (Pitt) failed to receive from HUD from June through November

---

* The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation.

1976, because Pitt had delayed certification to HUD in this period. Holbrook had paid the entire rent for this period and sought reimbursement from Pitt for the amount of the rent subsidy which HUD had failed to pay. Pitt filed in the action a third-party complaint against HUD for failure of HUD to inform Pitt of his obligations under Section 8. HUD then removed the action on February 17, 1978, to the United States District Court for the Eastern District of Wisconsin.

### 3.

After the action had been removed to the District Court, Holbrook amended her complaint. The original complaint against Pitt was redesignated Count I. Two new counts, II and III, against HUD were added under Fed.R.Civ.P. 23(a) and (b)(2) on behalf of classes consisting of all families in Wisconsin who resided or who will reside in housing units when Section 8 contracts were or will be executed between HUD and the owner of those housing units but who have not received or will not receive the benefits of housing assistance payments as of the effective date of the Section 8 contracts. The effort was to secure for the class all rental assistance payments retroactive to the effective date of the Section 8 contracts. The theory of Count II was that the Section 8 contracts were for the benefit of the class members as third-party beneficiaries of those contracts. The theory of Count III was that the procedures of HUD in respect of housing assistance payments in the period between the execution of Section 8 contracts and the commencement of housing assistance payments was a violation of the rights of class members to due process of law.

By order filed November 6, 1978, Counts II and III were determined by the District Court to be maintainable as a class action. Fed.R.Civ.P. 23(c)(1). At the same time a decision was filed by the District Court permitting plaintiff Holbrook to represent a class of plaintiffs with respect to Counts II and III.

On stipulated facts, plaintiff Holbrook and HUD filed cross motions for summary judgment on July 30 and August 1, 1979 respectively.

Pitt then certified Holbrook to HUD as eligible for retroactive rental assistance payments, HUD made the amount of these payments available to Pitt, and Pitt tendered the amount to Holbrook, by whom it was accepted. For all practical purposes, Pitt and Count I disappeared from the action at this point.

On October 31, 1979, the District Court filed an opinion, reported at 479 F.Supp. 990, granting the motion of HUD for summary judgment dismissing the action and denying the motion of plaintiff for summary judgment. Count I was dismissed as moot, the individual claim of Holbrook having been paid. The class claims in Counts II and III were dismissed on the ground that the tenants had no valid claim to retroactive housing assistance payments.

There was then an appeal by plaintiff to this Court.

On March 2, 1981, this Court filed its opinion (written by Judge Cudahy) reversing the judgment of the District Court. 643 F.2d 1261. The theory of Count II was sustained and it was held that the class could recover retroactive housing assistance payments as third-party beneficiaries of the Section 8 contracts between HUD and the housing development owners. The theory of Count III was sustained; it was held that the class members were entitled to retroactive housing assistance payments and to due process of law in respect of procedural protections for that entitlement; on remand, the District Court was directed to "determine the precise contours of the requirements of procedural due process...." (643 F.2d at 1281).

This action dealt with *retroactive* Section 8 housing assistance payments—that is, monthly payments due from the date of the Section 8 contract between project owner and HUD and the commencement of actual payments by HUD to the owner for eligible tenants. After the commencement of these payments to the owner by HUD, the amounts payable by the tenants for rent

were reduced by the amount of the HUD rent subsidy. But there was a period after the date of the Section 8 contract when HUD (because of delayed certification by the owner) had not made these subsidy payments and the tenants had been obliged to pay the full rent. This Court ruled that the subsidy payments should be made by HUD from the date of the Section 8 contract. Since, as has been seen, these payments must be made by HUD to the owner and since the owner had already received the full rent from the tenants, there had necessarily to be a reimbursement to the tenants for the excess rent paid by them during the interim period after the date of the Section 8 contract.

### 4.

After reversal and remand, plaintiff Holbrook, as class representative, and HUD made a stipulation of settlement of the action. On April 14, 1982, these parties filed a joint motion for approval by the Court of the stipulation of settlement and on April 29, 1982, the District Court filed an order approving it and dismissing the action with prejudice. So far as appears in the record, no "notice of the proposed dismissal or compromise" (Fed.R.Civ.P. 23(e)) was given to members of the class. After the stipulation of settlement had been approved by the District Court, HUD gave notice to class members of the terms of settlement.

In summary, the stipulation of settlement provides that HUD will (1) obtain from the project owners the names and addresses of all tenants eligible for retroactive housing assistance payments and all information necessary to calculate the amounts due to each tenant under the decision of this Court; (2) send by mail a notice in specified form to each eligible tenant "that HUD will pay retroactive housing assistance payments to the project owner on behalf of the tenant"; (3) publish on two days in a specified Wisconsin newspaper the same notice; (4) provide retroactive housing assistance payments to the project owners on behalf of all eligible tenants "located through the mailed and published notice"; (5) require the project owners to send to the eligible tenants their retroactive housing assistance payments provided by HUD; and (6) further make retroactive housing assistance payments to the project owners on behalf of eligible tenants not located by the mailed or published notice but who request the payments from HUD within a one year period. The result of the settlement is thus that HUD agreed to pay to the project owners, for sending to all eligible tenants located after the specified efforts, the retroactive housing assistance payments due in accordance with this Court's decision.

It should be noted that, by reason of the breadth of the classes, the settlement was applicable not simply to eligible tenants in the Main Street Gardens housing project, where plaintiff Holbrook lived, but to all eligible tenants in all housing projects in Wisconsin where Section 8 housing assistance payment contracts had been made. There were some fifty of these.

### 5.

On May 10, 1982, plaintiff Holbrook filed a motion in the District Court under "28 U.S.C. § 2812 and the common fund doctrine" for an award of attorneys' fees. The citation to "§ 2812" must have been an error for "§ 2412", which contains a principal part of the Equal Access to Justice Act (sometimes hereafter "the Act" or "EAJA").

On October 21, 1982, the District Court filed a decision and order that "on plaintiff's motion for an allowance of attorneys' fees the sum of $30,000 be and hereby is determined as such reasonable fee". Nothing was said in the motion nor in the decision and order about the source of the attorneys' fee, nor by whom it should be paid, nor to whom, nor when. It was presumably intended to be payable by HUD to counsel of record for plaintiff Holbrook when the order became final. It was stated in the decision and order: "In addition, the plaintiff's counsel ask the Court to rule that the full fee be assessed against absent class members. This request will be granted." How the "full fee" of $30,000 allowed

was to be "assessed against absent class members" was not mentioned. Presumably HUD was expected to write out a check in payment of the $30,000 and it would then be up to HUD to obtain reimbursement by assessing the "absent class members".

The District Court made two statements of the grounds on which it allowed attorneys' fees to plaintiff. The first was that, as the "prevailing party", plaintiff was "entitled" to attorneys' fees under 28 U.S.C. § 2412. The second was that such fees "may be recovered from the United States only 'to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.' 28 U.S.C. § 2412(b). I find that the non-statutory common fund doctrine is applicable in the circumstances of this case".

The order of allowance of attorneys' fees, filed October 21, 1982, was then, by timely notice of appeal, brought here for review.

### 6.

The argument for appellee to justify the award made below is, as we understand it, in two separate parts: (a) the award was proper under the Equal Access to Justice Act, specifically 28 U.S.C. § 2412(b); and (b) the award was proper under the common fund doctrine.

Before discussing these arguments, we must observe that they are based on what appears to be a serious misconception of some of the facts.

In the Brief for Appellee (p. 5.) the first argument is introduced under this heading: "The District Court was entitled to assess attorney's fees against the benefits of those class members who did not claim benefits under the judgment". We are not made aware in the record of any "judgment" of the District Court conferring "benefits" on class members. There was a "stipulation of settlement" and an order of approval, but no judgment. We cannot believe that the "judgment" to which appellee directs attention is meant to refer to the earlier decision of this Court. That decision, while favorable to the class members, was not a judgment nor a "decree" (as stated in the "stipulation of settlement"). The earlier decision of this Court did not end the action; the decision remanded the action "for further proceedings in accordance with this opinion". Because of the settlement there were no "further proceedings" except for the award of attorneys' fees.

There are a number of references by appellee in her Brief (e.g., pp. 3, 8, 10, 11, 20) to "filing of claims by class members", "proving their individual claims", "class members who did not file a claim for benefits", "class members who claimed benefits", "unclaiming class members", and the like. These expressions assume that the settlement procedure provided for the filing by class members of a claim and thus that class members had an option to make a claim or not. As we read the stipulation of settlement, there was no procedure for class members to file or otherwise to make a claim. The agreed payments (housing assistance payments retroactive to the date of the Section 8 contracts) were required by the settlement as well as by the Section 8 statute to be made by HUD to *the owners* and by the owners to "all tenants ... who have been located through the mailed and published notice". The mailed and published notice given to the tenant class members said nothing about any "claim" by class members and the only action suggested to them was to "make sure that the owner of the Section 8 project where you lived has your present address and telephone number". The notice advised them that "retroactive housing assistance payments are being provided" for those eligible.

It is said for appellee (Brief, p. 8) that "the District Court assessed the entire fee against the shares of those class members who did not file a claim for benefits". This is not an accurate statement of the order of the District Court. That order stated: "[T]he plaintiff's counsel ask the court to rule that the full fee be assessed against

*absent* class members. This request will be granted". (emphasis supplied)

### 7.

The Equal Access to Justice Act was enacted in 1980, as part of amendments to the Small Business Act. Pub.L. 96–481, Title II, § 204(a), 94 Stat. 2325. One of the declared purposes in the Act was "to insure the applicability in actions by or against the United States of the common law and statutory exceptions to the 'American Rule' respecting the award of attorney fees". 94 Stat. 2325. The "American Rule" has been thus described: "... the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).

The part of the Act on which plaintiff Holbrook relies (Brief, p. 5) to justify the attorneys' fee awarded below, and the part of the Act on which the District Court relied, is Section 2412(b), as follows (emphasis supplied):

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. *The United States shall be liable for such fees* and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

This Court has described the change made by this part of the EAJA as follows (*Berman v. Schweiker*, 713 F.2d 1290, 1295 (7th Cir.1983); emphasis supplied):

> Before the EAJA, Section 2412 authorized an award of attorneys' fees *against the United States* only where specifically provided by statute. The EAJA amended this section to provide that if certain conditions are met any prevailing party

may apply for attorneys' fees *against the government* unless such fees are expressly prohibited by another statute. 28 U.S.C. § 2412(b).

The argument for plaintiff appellee here is that under the common fund doctrine "any other party would be liable" (28 U.S.C. § 2412(b)) for attorneys' fees and therefore the United States under the EAJA can be made liable. As expressed in the Brief for appellee (p. 6), "the EAJA removed the federal government's exemption from attorney's fees under the common fund doctrine". The District Court appears to have accepted this argument. We are not able to do so.

■ The common fund doctrine, an historic remedy of equity, deals with the liability for attorneys' fees of a *fund* over which the Court has jurisdiction, and not with the liability of a losing *party* for attorneys' fees of a winning *party*. The EAJA deals with the liability of the United States as a *party* for attorneys' fees; the common fund doctrine deals with the liability of a *fund* for attorneys' fees. The two concepts are different.

The difference in the two concepts was succinctly recognized in an opinion for the Ninth Circuit on attorneys' fees last year (*McQuiston v. Marsh*, 707 F.2d 1082, 1085):

> "First, the common benefit theory fails because McQuiston is seeking an award from the opposing party, not from a common fund."

The Supreme Court has explained the common fund doctrine in some detail in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–481, 100 S.Ct. 745, 749–751, 62 L.Ed.2d 676 (1980); (emphasis supplied):

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee *from the fund as a whole* .... The common-fund doctrine reflects the traditional practice in courts of equity, ... and it stands as a well-recognized exception to the general principle that requires every litigant to

bear his own attorney's fees, .... The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense .... Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees *against the entire fund,* thus spreading fees proportionately among those benefited by the suit ....

\* \* \* \* \* \*

The common-fund doctrine, as applied in this case, is entirely consistent with the American rule against taxing the losing party with the victor's attorney's fees.... The District Court's judgment assesses attorney's fee *against a fund* awarded to the prevailing class.

The Equal Access to Justice Act, 28 U.S.C. § 2412(b), on which appellee relies, deals entirely with the liability of an adversary *party* for attorneys' fees. Section 2412(b) declares: "The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law...." The common fund doctrine would, if applicable, make a *fund* liable, but not an adversary party, such as the United States through HUD. There are provisions of the EAJA other than 28 U.S.C. § 2412(b) under which appellee might have sought attorneys' fees from the United States through HUD, but did not do so. For example, there is a provision of the EAJA that the court "shall award" an attorney's fee against the United States to a "prevailing party ... unless the court finds that the position of the United States was substantially justified ...". 28 U.S.C. § 2412(d)(1)(A) Plaintiff Holbrook did not seek attorneys' fees under this section, undoubtedly because it is evident that the position of the United States in the litigation was "substantially justified" inasmuch as summary judgment was granted to the United States in the District Court.

That the EAJA in Section 2412(b) does not authorize any award of attorneys' fees

from a common fund appears from Section 2412(c)(2), which provides that (except where based on bad faith) any judgment "for fees and expenses of attorneys pursuant to subsection (b) shall be paid as provided in sections 2414 and 2517 of this title ...". It is Section 2414 which is applicable to judgments of a District Court and which provides in relevant part; "[P]ayment of final judgments rendered by a district court ... against the United States shall be made on settlements by the General Accounting Office".

■. We find nothing in the EAJA which would authorize the award of attorneys' fees made by the District Court in this action.

8.

■ Without regard to the EAJA, plaintiff Holbrook would be entitled to an award of attorneys' fees under the common fund doctrine standing alone, if that doctrine were applicable.

In the circumstances of this case, the common fund doctrine cannot be applied because there is no "common fund".

While the District Court found the doctrine "applicable", the "fund" was not identified nor was there any direction for any payment from any "fund" or by anybody.

Nothing done by plaintiff Holbrook nor by her attorneys created any "fund". There was never any judgment for plaintiff nor for the classes which created any fund. Nothing in the way of money or otherwise was transferred by HUD to any fund as a result of this action. There was simply a stipulation of settlement under which, as a matter of contract obligation, HUD agreed "to provide retroactive housing assistance payments to the project owners on behalf of all tenants described in Paragraph Two who have been located through the mailed and published notice". HUD further agreed to "require the project owners to send the retroactive housing assistance payments to the named tenants". Nothing was said as to where HUD would obtain the funds from which to make its promised

payments to the project owners; it was simply an obligation of HUD to provide the payments from any source it saw fit to use.

At the time the Section 8 contract was made by HUD with Pitt, and of course long before this action was commenced, an account was set up on the books of HUD, under Regulations of the Secretary (24 C.F.R. § 886.108(c)(1)), for the Main Street Gardens project, to which account were to be charged housing assistance payments and "other costs" authorized by the Secretary. This account is referred to in the Regulations as a "Project Account" to be established and maintained by HUD "as a specifically identified and segregated account". This account was established on June 10, 1976, in the sum of $173,460. Presumably, similar accounts were set up by HUD on its books in respect of each Section 8 project in Wisconsin. What amounts were entered as credits and debits to these accounts does not appear in the record, nor the present balance from the book entries made to date.

So far as we can tell from the record, these numerous accounts represent entries on the books of HUD, made under applicable regulations before the commencement of this action. It is not shown that they represent money balances in any earmarked accounts subject to the control of HUD at the United States Treasury nor at any other financial institution. The District Court made no order that the attorneys' fee award be paid from any designated fund. All that appears is that HUD has a contract obligation to pay to project owners for transmittal to eligible tenants retroactive housing assistance payments in an amount to be calculated according to the formula set out in the settlement stipulation; HUD is then to assess the amount against "absent class members".

We have taken note of the statement in a footnote to the earlier opinion of this Court (643 F.2d at 1275, n. 28) that HUD "has created an identifiable *res* to which the tenants have a claim ...". This statement appears in a discussion of the obligation of HUD to make housing assistance payments from the date of the Section 8 contracts rather than from the date of the owner's certification. It is entirely remote from the allowance of attorneys' fees from a fund under the jurisdiction of the Court created by one litigant for the benefit of a numerous class who would be unjustly enriched if they did not contribute to the cost of creating the fund. "Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit". *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980).

It is not shown that there is any common fund created by the litigation from which attorneys' fees can be paid, and the District Court, while invoking the "common fund doctrine," did not in fact order payment from any fund.

The common fund doctrine does not authorize the order made below as to attorneys' fees.

### 9.

■ Before ending consideration of the common fund doctrine, it may be well to indicate that, even if there were a common fund from which attorneys' fees could be paid, the manner of payment ordered by the District Court was entirely erroneous.

■ A basic principle of the common fund doctrine is that fees and expenses of attorneys shall be paid from the entire fund in order that *each person* benefited shall pay a proportionate part of those expenses. This principle led the Supreme Court to emphasize that the common fund doctrine requires that attorneys' fees be charged "against the entire fund, thus spreading fees proportionately among those benefited by the suit". *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). The District Court order did not do this; it purported to assess all fees against "absent class members" which would mean those class members not "located" by the project owner. No payments could be sent to them

and they could never benefit from the suit. The order below ordered "absent class members", who did not benefit from the suit, to pay all the fees of attorneys and ordered that those class members who did benefit from the suit pay nothing toward the fees of attorneys. No such order can stand.

10.

As a last resort, appellee seeks to justify the order below under 42 U.S.C. § 1988 (the Civil Rights Attorney's Fee Award Act of 1976). This point was not raised in the court below.

The cited Act authorizes an award of counsel fees in actions under specific enumerated sections of the Civil Rights laws. The case at bar was not brought under any of these sections, but appellee relies on *Lauritzen v. Secretary of the Navy*, 546 F.Supp. 1221 (C.D.Cal.1982) for an expansion of EAJA to include fee allowances in actions "equivalent" to those enumerated in 42 U.S.C. § 1988.

There is a short answer to this argument for the order on appeal. This Court, in *Saxner v. Benson*, 727 F.2d 669, 673 (1984) declined to accept a similar argument, that the EAJA be expanded to include fees in actions "virtually identical" to an action enumerated in 42 U.S.C. § 1988. Moreover, *Lauritzen v. Secretary* has been reversed on this point by the Ninth Circuit in *Lauritzen v. Lehman*, 736 F.2d 550, 553–559 (July 5, 1984), citing the *Saxner* decision of this Court.

The order appealed from is reversed and vacated.